SOLOMON L. M. CONSER *vs.* SAMUEL SNOWDEN, Adm'r
c. t. a. of AGNES D. SCHOLL.

*Donatio causa mortis—Its essentials—What constitutes de-
livery of money in a Savings Bank—Rejection of Evidence
no ground of Appeal where its rejection is not prejudicial to
the appellant.*

It is well settled in Maryland, that there is no difference in the legal
requirements to make a good delivery in gifts *inter vivos* and *mortis
causa.*

Although a gift *mortis causa* depends for its absoluteness on the death
of the giver from the disease threatening life when the gift was
made, so that recovery would revoke it, still for the time being,
and until recovery, the absolute dominion over the thing given,
must be parted with at the time of the gift.

S. on the 3rd of April, 1877, being sick at the time, gave C. a written
order on a Savings Bank, for the payment to him of a sum of
money on deposit in said Bank in her name. A memorandum was
added, "the book must be sent with this order." At the same
time she gave C. a written order on G. in whose possession her
book of deposit then was, requesting G. to deliver said book to C.
The order for the payment of the money, was presented at the Bank
by C. without the bank book, and he was told the money was
there, and the order was in proper form, but could not be paid till
the book was produced. S. died on the 10th of July, 1877, at a
different place from that where the order was given. In an action
by C. against the administrator of S. to recover the amount of the
order, the above facts were proven, but there was no proof that C.
ever had the bank book in his possession, or that he ever made
any efforts to get it; nor did it appear of what disease S. died, or
what was her disease at the time the order was given. HELD:

1st. That standing as the money did in the name of S. at the Bank
when she died, it devolved upon her legal representative, who
having properly possessed himself of it, the plaintiff had no en-
forceable claim against the defendant or the fund.

2nd. That there was a serious failure of proof as to the disorder of which the alleged donor died, and it was essential to make the attempted gift, an effective gift *mortis causa*, that the donor should die of the very disorder with which she was suffering when the gift was made, and that there should be no intervening recovery.

Where a party is not prejudiced by the refusal to permit him to testify, such refusal, even if erroneous, is no ground of appeal.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court. The plaintiff excepted to the rulings of the court below, (BROWN, J.,) which are sufficiently set forth in the opinion of this Court, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and IRVING, J.

*Charles E. Garritee* and *Charles J. Bonaparte,* for the appellant.

A valid delivery, in cases of this class, "must be according to the manner in which the particular thing is susceptible of being delivered." (*Hinkley Test. Law,* 147.) "Where the nature of the thing will not admit of a corporal delivery, * * * * a delivery of the *means* of coming at the possession, or making use of the thing given, will be sufficient." *Williams on Executors,* 7th *Ed.,* 776. And as will be seen from the cases, these "means of coming at the possession, or making use," are often extremely indirect. *Jones vs. Selby, Prec. Ch.* 300 ; *Smith vs. Smith,* 2 *Stra.,* 955 ; *Snellgrove vs. Bailey,* 3 *Atk.,* 214 ; *Gardiner vs. Parker,* 3 *Madd.,* 184 ; *Blount vs. Burrow,* 4 *Bro. C. C.,* 72 ; *Duffield vs. Elwes,* 1 *Bligh, N. S.,* 498, (1 *Dow. N. S.,* 1 ;) *Veal vs. Veal,* 27 *Beav.,* 303.

More especially, the delivery of a cheque or order on a bank or banker, when made under circumstances satisfy-

ing the first two conditions of a *donatio mortis causa,* has been adjudged a sufficient delivery of the money it calls for. *Lawson vs. Lawson,* 1 *P. Wms.,* 441; *Bouts vs. Ellis,* 17 *Beav.,* 121; 4 *DeG., M. & G.,* 249. These cases must be distinguished from *Hewitt vs. Kaye,* 6 *L. R. Eq. Cas.,* 618, and *In re Beaks' Estate,* 13 *L. R. Eq. Cas.,* 734, where the cheques, although signed *in extremis,* were intended as absolute and immediate benefactions, and could be effective, therefore, only as gifts *inter vivos,* though even for this purpose, the delivery in the present case would be sufficient, on the authority of *Bromley vs. Brunton,* 6 *L. R. Eq. Cas.,* 275.

The true test of sufficiency seems to be that the delivery should be the best which the circumstances of the case permit, i. e. that the donor should indicate his intention to give by acts as unequivocal as the nature of the thing given, and his own physical condition and surroundings allow. *Duffield vs. Elwes,* 1 *Bligh N. S.,* 498, (1 *Dow. N. S.,* 1;) *Story Eq. Jur.,* ch. *X,* sec. 607; *Brown vs. Brown,* 18 *Conn.,* 410; *Waring vs. Edmonds,* 11 *Md.,* 424; *Moore vs. Darton,* 4 *DeG. & Sm.,* 517.

If we apply this test, we find that this testatrix did *everything* which an illiterate and dying woman could do; her bank-book being in the custody of a person living at a distance, and often absent from the city, to give the amount of money covered by her order to the plaintiff, she gave him a cheque in proper form on the Bank for the $1000; she gave him a written order on its custodian for the book; she had charged him previously to obtain this and she omitted no act that could possibly aid in effecting her purpose. For the plaintiff to obtain the book from Mrs. Gambrill, and the money from the Bank, there was no need that the testatrix should perform one act or speak one word more than she did; and to hold the delivery herein sufficient, the Court must find that she *could*

not have made a *donatio mortis causa* of her bank balance without the concurrence of some third party.

There is, it is confidently submitted, no authority. in the Maryland *decisions*, however it may be as to some *dicta*, to deny this unfortunate woman the right to do as she would with her own. No case in our reports, or it is believed in those of any reputable jurisdiction, avoids a gift really in expectancy of death, when accompanied by the best delivery the donor could make of its subject-matter, and the appellant claims of this Court a decision, that by the transactions of April 3rd, 1877, he acquired an equitable title to the amount of the order then signed, which a Court of chancery would compel the legal representative of the deceased to perfect.

If this claim is well founded, the appellant was entitled to recover of the appellee the amount of this gift with interest, in the *quasi* equitable action for money had and received. *Smith vs. Jones*, 1 *Dowl.*, (*N. S.*) 526; *Marsh vs. Keeting*, 1 *Bing. N. C.*, 198; *Calland vs. Lloyd*, 6 *M. & W.*, 26; *Hayslep vs. Gymer*, 1 *Ad. & El.*, 162.

*Samuel Snowden* and *Thomas A. Whelan*, for the appellee.

It is absolutely essential, to render perfect a *donatio mortis causa*, that the donor should be then in his last illness, and that the gift shall take effect only on the death of the donor by a disorder from which he is then suffering. *Hebb vs. Hebb*, 5 *Gill*, 509; *Taylor vs. Henry and Bruscup, Adm'rs*, 48 *Md.*, 559.

It is also absolutely essential to the perfection of a *gift mortis causa* that there be a delivery of the subject of the donation. The subject of the gift here, was a sum of money in the Savings Bank of Baltimore, the donor gave a check for the money, and also an order for the delivery of the bank-book, which was in the hands of a friend, Mrs. Gambrill; the rules of the Bank which she had at

one time in her possession, prescribes that no check would be paid by the Bank, unless accompanied by the production of the bank-book.

The delivery must be, according to the manner in which the particular thing is susceptible of being delivered, and *that which is not capable of being delivered, is not the subject of donation.* It is no answer to this to say, that under the particular circumstances of this case, the party did all that could have been done by her ; she was compelled to do more, the nature of the thing was susceptible of more ; it was susceptible of any actual delivery in money, or the actual delivery at least of the bank-book. *Pennington vs. Gittings,* 2 *G. & J.,* 215 ; *Murray vs. Cannon, Adm'r,* 41 *Md.,* 476 ; *Nickerson vs. Nickerson,* 28 *Md.,* 332 ; *Hebb vs. Hebb,* 5 *Gill,* 506 ; *Taylor vs. Henry and Bruscup, Adm'rs,* 48 *Md.,* 559 ; *Bradley vs. Hunt, Adm'r,* 5 *G. & J.,* 58.

In the case of *Waring vs. Edmonds,* 11 *Md.,* 432, cited by the counsel for the appellant in the Court below, although the subject of the gift, three negroes, was not personally present, still the party in whose custody they were, was present, and was solemnly charged to fulfil the wish of the donor, which she equally as solemnly promised to do, and actually did. And on page 433, the Court say the party was in *extremis* unable to write, and fully conscious of her approaching death, declaring the gift and the delivery, and also the open avowal of its acceptance by the donee.

In this particular case, although the order for delivery of the bank-book was given, still it does not appear that any demand was ever made for it, or any acceptance by the holder of it, and the donor died with it in her possession, as the administrator presented the same to the Bank for payment of the deposits. Until the bank-book was delivered, the party had a right to recall the order, and demand the book, so there remained at all times a *locus penitentiae,* and the grantor never parted with the

legal dominion over this money; it cannot be held likewise to be a trust, for there is no evidence that Mrs. Gambrill held the bank-book afterwards for the appellant, or that she even knew of the order being given, or in any way accepted it. Had the appellant been allowed to be sworn, he could not have testified on these subjects, and cured this want of proof; so there was no error by the Court, upon which the judgment could be reversed, and the appellee submits that the judgment should be affirmed.

IRVING, J., delivered the opinion of the Court.

This is an action of assumpsit instituted by the appellant against the appellee as administrator *c. t. a.* of Agnes Scholl. The *narr.* is in the ordinary form, with money counts, and a bill of particulars limits the claim of the appellant to the count for money had and received to the appellant's use, and defines the claim to be for one thousand dollars with interest accrued, which has been received by the appellee for the use of the appellant, the same having been given the appellant by the appellee's testator as a gift, *mortis causa.*

The facts essential to a proper understanding of the questions presented for our decision are as follows: Agnes Scholl, who for many years was a servant in the appellant's family, was ill at Bayview Asylum, and the appellant and his daughter, (Mrs. Schaefer) in March, 1877, visited her there. While there, Mrs. Schaefer testifies, "She made remarks and exclamations as though she was suffering pain; she then said she had a considerable amount of money in a Bank on Gay street, which she wished to leave the appellant; he asked her to leave it to his children instead, and she requested him to prepare a will leaving it equally to witness and her two brothers; she then seemed much worried lest some accident should befall this will, and appellant suggested that she should give him an order for the money on the bank; to this she assented, and asked him to prepare such an order, and

also told him to obtain her bank book from a Mrs. Margaret A. Gambrill, in whose custody she said it then was; she said she did not remember the exact amount of the balance shown by this book, but knew it exceeded one thousand dollars. On April 3rd, 1877, the witness and appellant went again to see her, when she signed the following will, "In the name of God, Amen! I, Agnes Scholl, of the City of Baltimore, and State of Maryland, being of lawful age and in my right mind, after due reflection, and uninfluenced by any one concerned, and of my own will and accord, do make this my last will and testament. And, first, it is my will that so much of the $65 last deposited in the Savings Bank of Baltimore as may be necessary, be expended to secure my remains a decent Christian burial. Secondly. It is my will that all my other goods and moneys and all my estate and effects whatsoever, be distributed equally between Virginia M. Conser, Carlton Conser and C. Ellsworth Conser, children of S. L. M. Conser, excepting my clothes and household effects, which are stored at Mrs. Louisa Caskie's, which shall be Virginia M. Conser's exclusively. And thirdly, it is my will and pleasure that the said S. L. M. Conser, of the city aforesaid, shall see that this, my will, is fully and truly executed." This will was attested by V. Marion Conser, (Mrs. Schaefer), and the appellant. The testatrix died on the tenth of July, 1877, and the will filed in the proper office and proved by S. L. M. Conser on the 6th of August, 1877, and at the time S. L. M. Conser proved the will, he swore he received it from the testatrix, and had retained it, and knew of no other. The order given appellant on April, 3rd, 1877, read as follows:

"Baltimore, April 3rd, 1877. The Savings Bank of Baltimore, pay to the order of S. L. M. Conser, or bearer, the sum of one thousand dollars and —— cents, and charge book No. ——. Signed, Agnes $\times$ Scholl." It was witnessed

by V. Marion Conser.  A memorandum was added, "The book must be sent with this order."  The order for the bank book was in these words, "Mrs. Gambrill will please give Mr. Conser my bank book."  It was signed by Agnes Scholl making her mark, and was without witness.  This last paper was first in appellant's possession, and was afterwards given to the witness, Mrs. Schaefer, who never gave it back as she remembers, and after search it cannot be found, and witness thought it was lost.  The order for the money, after it was given the appellant, witness and the appellant took to the Bank and exhibited, and were told the money was there, and the order in proper form, but could not be paid till the book was produced. No proof was offered that the book was ever in appellant's hands, or that he ever made any effort to get it.  It was not shown what became of the bank book.  But the appellant, to raise the presumption that it was never returned to the testatrix, proved by a daughter of Mrs. Gambrill, the custodian of it, that for many years prior to the 3rd of April, 1877, her mother kept a bank book for Mrs. Scholl ; that it was kept in her wardrobe; that witness lived with her mother, and had never known of this book being given up prior to April 3rd, 1877, and believed it was then in her custody.  About that time her mother was frequently absent from Baltimore, visiting in Anne Arundel County.  The appellant having closed his case without offering any other proof than what has been herein incorporated, the appellee was required by the Court to ask an instruction "that under the pleadings in this cause there is not sufficient evidence on which the plaintiff can recover, and their verdict must be for defendant."  This was done, and the instruction was granted. The granting of this prayer and the refusal to permit the appellant to testify as a witness are the only subjects of exception.  We will consider them in reverse order, and first pass upon the second exception, which relates to the instruction given the jury.

The appellant contends that all the requisites necessary to the perfection of a gift *mortis causa* coexist in this case, and especially complains that in deciding that a sufficient delivery was not effected, so as to entitle the appellant to recover, the Court improperly held there was no difference in the legal essentials of delivery in a gift *mortis causa* and one *inter vivos.* To sustain this view, very many cases have been cited and relied on, which it will not be necessary for us to review or refer to, for the doctrine is well settled in Maryland, that there is no difference in the legal requirements to make a good delivery in gifts *inter vivos* and *mortis causa.* According to the decisions in this State, if the delivery in this case was not such as would have made an effective gift *inter vivos*, it will be insufficient to perfect an attempted gift *mortis causa.* *Pennington, Adm'r, &c. vs. Gittings' Ex'r, &c.*, 2 *Gill & Johnson*, 215 ; *Bradley and Wife vs. Hunt, Adm'r of Jack*, 5 *Gill & Johns.*, 58 ; *Hebb vs. Hebb*, 5 *Gill*, 509 ; *Taylor vs. Henry*, 48 *Md.*, 559. Justice WOODWARD, in *Mitchener vs. Dale*, 23 *Pa. St. R.*, 59, concisely defines a gift *mortis causa* to be that of a "chattel made by a person in his last illness, or in *periculo mortis*, subject to the implied condition that if the donor recover, or if the donee die first, the gift shall be void."

In *Taylor vs. Henry*, 48 *Md.*, this Court says, "In order to render perfect a *donatio mortis causa* three things must concur: 1. That the gift be made with a view to the death. 2. That it be with a condition, either express or implied, that it shall take effect only on the death of the donor, by a disorder from which he is then suffering ; and 3. That there be a delivery of the subject of the donation." In that case, as here, the claim was made to a fund on deposit in bank, which was claimed as a gift of that character. In that case the deceased was suffering from the disease of which he died. After the deposit of the money in Bank to the credit of himself and his sister,

*and subject to the order of the survivor of them,* the deceased made a will, in which he disposed of his estate between his mother and sisters, one of whom was the claimant, afterwards, of all as a gift. He had no property but that fund. The Court held it to be clearly neither a gift *inter vivos* nor *mortis causa.* In *Pennington's Case* the alleged donor had a certificate of stock in the Commercial and Farmers Bank of Baltimore, which shortly before his death he endorsed, and handed to the donee, saying, he gave her the stock; but the certificate was not in the life time of the testator taken to the Bank, that the stock might be transferred to Mrs. Patterson on the books of the Bank. The Court held that it was stock which was intended to be given, and there was therefore no delivery of it. The Court said it was like the case of *Mary Tate vs. Hilbert,* and *Jane Tate vs. Hilbert,* 2 *Vesey, Jr.,* 112, where a man, a short time before his death, gave a check on his banker, which was not presented for payment before the death of the donor, and it was held that as the check was not presented and paid in the life-time of the maker, the intended donation of the money was defeated for want of delivery ; notwithstanding the holder of the check by presenting and obtaining payment in the life-time of the maker could have perfected the gift. This case of *Tate* is fully adopted by the Court in *Pennington's Case* as laying down the law properly ; and the Court say with reference to the question before them, whether it was an attempted gift *inter vivos* or *mortis cousa,* made no difference. If in the *Tate Case* the holder of the check was not entitled to relief in equity, it is very clear that this appellant was not entitled to recover, upon his proof, from the appellee, adm'r, of Agnes Scholl, in his suit at law. In this case it was the money which was sought to be given, and an order was given for its payment to the appellant, and although he does appear to have gone to the Bank with his order, he was not paid, but was told it could

not be paid without the bank book being brought with the order. Indeed he had notice of this rule of the Bank, for it appears the very order which he took contained a notice endorsed that the bank book must be presented with the order. It is true he appears to have had an order on the custodian of the bank book for its delivery to him; but it does not appear that he ever made any demand for it, or ever obtained it, or ever made further effort to procure the money from the Bank. The money which it is alleged was sought to be given was never obtained, and according to the principles settled in the cases already referred to, the gift was not perfected by a sufficient delivery of the thing given, in the life-time of the appellee's testator. Although such gift depends for its absoluteness on the death of the giver from the disorder threatening life when the gift was made, so that recovery would revoke it, still, for the time being and until recovery, the absolute dominion over the thing given must be parted with at the time of the gift. In this case it is clear that so long as the money was in the Bank in her name, she or any other person with an order from her, on presenting the bank book, could have drawn the money, notwithstanding the appellant had an order for it. He never was in condition to secure the payment from the Bank, and payment by the Bank to any one else properly equipped with an order and the book, would have been legitimately made. Standing, as the money did in Agnes Scholl's name, at the Bank when she died, it devolved upon the legal representative, who has properly possessed himself of it, and the appellant has no enforcible claim against the appellee or the fund. In addition to the defective delivery, on which ground we were told at the hearing, the Court below based its instruction, there was a serious failure of proof as to the disorder of which the alleged donor died. As we have already said it was essential, to make the attempted gift, an effective gift *mor-*

*tis causa,* that the donor should die of the very disorder with which she was suffering when the gift was made, and that there should have been no intervening recovery. In this case the character of the sickness with which she was suffering at the time the transaction took place, was very imperfectly described. She is represented as making exclamations indicative of suffering, and that is all. At that time she was at Bayview Hospital. She died in an entirely different institution—St. Agnes Hospital, to which she removed. How or when she removed does not appear. In what condition she was after the third day of April, does not appear. Whether the same disorder with which she was suffering on the 3rd of April continued, and finally proved fatal, is not shown. We only know that three months and more after the third of April, she died in an entirely different locality. There is not a tittle of evidence as to the final cause of death; so that another ingredient of a gift *mortis causa* is entirely wanting. There was no error therefore in the instruction given by the Court, to which exception has been taken. Having decided that there was in this case no gift *causa mortis,* it becomes wholly unnecessary to decide the question of evidence; for even admitting the Court erred in the refusal to permit the appellant to testify, but upon which we express no opinion, the appellant was not prejudiced by it. We are not informed what he expected to prove, but it is very certain he could not prove the delivery of the money to him, for if he had got it he would not now be suing for it. The judgment will be affirmed.

*Judgment affirmed, with costs.*

(Decided 30th June, 1880.)