BRADLEY *et ux. vs.* HUNT, Adm'r of JACK.—*December,* 1832.

A promissory note, payable to a payee or order, is not the subject of a donation *mortis causa,* by mere parol.

The mere delivery by a husband, in his last sickness, to his wife, of a promissory note, payable to him or order, is not valid, as a *donatio mortis causa.* No property in such a note passes by delivery; being a *chose in action,* it must notwithstanding the delivery, be sued in the name of the executor of the husband.

Bank notes, and promissory notes, payable to bearer, pass by delivery as money, and constitute valid donations when delivered; for in such cases the property in, and legal dominion over the thing intended to be given, pass with the possession.

Whether the distinction prevailing in *England,* between the case of a bond and a promissory note payable to order, as to donations *mortis causa,* will be adopted here.  (*qr.*)

APPEAL from the Court of Chancery.

The appellants, *John Bradley* and *Jane* his wife, (former-- ly *Jane Jack,*) filed the present bill against the appellee, *Jesse Hunt,* administrator of *William Jack,* on the 20th of April, 1831. The bill alleged, that *William Jack,* the former husband of the complainant, *Jane,* being the owner, and possessor of a certificate or obligation, of the *Maryland Savings Institution,* for a considerable sum of money, in September, 1829, and when the said *Jack* was lying dangerously ill, and expecting to die, gave the same to the said *Jane,* by an actual delivery thereof, in the presence of witnesses, and on the evening of the same day, and within a few hours thereafter expired. That the deceased at the time, was of perfectly sound and disposing mind, memory, and understanding. That the defendant *Hunt,* took our letters of administration upon the said *Jack's* estate, and although the legal interest in said certificate vested in him in that character, yet the gift was good as a *donatio mortis causa,* and vesting the equitable interest in the donee, the said *Hunt* was but a trustee of the legal title for her benefit. That after the death of her husband, the said *Jack,* she the complainant *Jane,* delivered said certificate to his said administrator, for the purpose of his doing what might be necessary to secure her the beneficial use of the same, but that he refuses to recognise her title thereto. The bill then prayed, that said administrator may be compelled to deliver said certificate to the complainants, and to do whatever may be necessary to enable them to receive the money for the same, and for general relief.

The answer admitted, that the intestate in his life-time, owned such a certificate as the bill speaks of, payable to him or his order. That he died clear of debt, and that at the time when the alleged gift is said to have taken place, he was of sound mind, &c. The fact of the delivering of the certificate, by the intestate, to his then wife, (complainant *Jane,*) is not admitted or denied, and complainants are

put to the proof of that fact. That shortly after the decease of his intestate, and before he had taken out letters of administration on his estate, the complainant *Jane*, came to him the defendant, *bringing in her hand* the certificate aforesaid, saying that it had been given her by her deceased husband, by an unwritten or nuncupative will. That after the defendant had become the administrator of the said *Jack*, he paid the complainant *Jane*, her full distributive share of her husband's estate, but that he could not recognize her right to said certificate, which was not endorsed by his intestate, and upon which, when he obtained the money at the *Savings Institution*, he was required to endorse his name as his administrator. The answer admits the intermarriage of the complainants.

The certificate of the *Savings Institution*, the subject of this suit, is in the following form:

"Certificate of special deposit, No. 755.
$568.

*Baltimore*, January 1st, 1829.

*Mr. Wm. Jack* has this day deposited in the *Maryland Savings Institution*, five hundred and sixty eight dollars, which sum, with interest thereon, at the rate of four *per centum per annum*, will be paid to his order at thirty days sight."

A commission issued to take evidence, and proof was offered of the delivery of the certificate to the complainant *Jane*, by her former husband in his last illness; and by the defendant it was proved, that he had paid her, her distributive share of her former husband's estate. The proof is not introduced, because no question in regard to its sufficiency or insufficiency, was made in the argument, or decided by this court.

BLAND, Chancellor, (at Sept. term, 1831,) dismissed the bill with costs, when the complainants brought the present appeal.

The cause was argued before BUCHANAN, Ch. J., STEPHEN, and ARCHER, J.

*Campbell* for the appellants.

The certificate vested in the complainant *Jane* as a *donatio causa mortis*, and consequently the administrator has no title to the same, or only as the trustee of the complainants. 2 *Pow. on Mort.* 1047. *Hedges vs. Hedges, Prec. in Chanc.* 269. 1 *Roper on Leg.* 26, 27. The intention to give, and the delivery, being clearly proved or admitted, the only question is, whether the thing be susceptible of a *donatio mortis causa.*

There is a difference between the giving the donor's own note, and the note of a third person. The delivery of the latter may be good as a *donatio mortis causa*, when the former would not. *Tate vs. Tilbert*, 4 *Bro. Ch. R.* 286. *Pennington vs. Gittings*, 2 *Gill and Johns.* 217. *Drury vs. Smith*, 1 *P. Wms.* 404. *Lawson vs. Lawson*, 1 *Ib.* 440. *Miller vs. Miller*, 3 *Ib.* 356. *Hill vs. Chapman*, 2 *Bro. Ch. R.* 612. Although the failure of the donor to endorse the certificate, would render it necessary for the donee to use the name of his legal representative to recover the money by suit, still the equitable interest would pass. *Noland vs. Ringgold*, 3 *Harr. and Johns.* 218. *Williamson vs. Allen*, 2 *Gill and Johns.* 355.

*Nicholas* for the appellee.

The question is, whether a note payable *to order*, and not endorsed by the payee, can be the subject of a *donatio mortis causa?* That it cannot, he referred to *Pennington adm'r of Patterson vs. Gittings*, 2 *Gill and Johns.* 216. *Miller vs. Miller*, 3 *P. Wms.* 356. *Ward vs. Turner*, 2 *Ves. Sr.* 431. *Duffield vs. Elwes*, 1 *Peters' Cond. Ch. R.* 120. 2 *Kent's Com.* 362. He insisted that the gift was not complete, because the money could not be received by the donee without the endorsement of the donor's representative, and as the court would not compel the donor if alive, to consummate the gift, so neither will they compel his representative, the present defendant.

Buchanan, Ch. J., delivered the opinion of the court.

We are relieved from an examination of the question of fact, whether there was or not, a sufficient delivery by *William Jack*, the deceased, to the wife of the complainant, *John Bradley*, of the instrument of writing which forms the subject of the bill, that question being waived by the counsel on the part of the appellee; and the only inquiry to which our attention is directed, is, whether a promissory note to the payee or order, is the subject of a *donatio mortis causa*, by the payee. It is a settled rule by law, that such a gift cannot be by mere parol, but that *a delivery* of the thing intended to be given, is essential to the perfection of the gift; and it was so held by this court, in *Pennington adm'r of Patterson vs. Exec'r of Gittings*, 2 *Gill and Johns.* 218, which was the case of a delivery by a father to his daughter, of a certificate of shares in the capital stock of a bank; and the object of the bill was to compel the executor of the father to transfer the stock to the daughter, to whom, it was the intention of the father to have given it. But as the delivery of the *certificate* was not a transfer and delivery of the *stock*, the *thing* intended to be given, and which could only be *transferred* on the books of the bank, it was held, not to be a donation *mortis causa*, for want of such transfer, that being the only mode in which the shares of stock were susceptible of being delivered.

To constitute a *donatio mortis causa*, the gift should be full and complete at the time, passing from the donor the legal power, and dominion over the thing intended to be given, and leaving nothing to be done by him, or his executor, to perfect it. Hence bank notes are the subjects of such gifts, they being considered as money, and the property in them, passing by delivery. *Miller vs. Miller*, 3 *P. Wms.* 335—and so as to promissory notes payable to bearer, which pass by delivery, and the property, and legal dominion over the thing intended to be given, passing with the possession from the donor to the donee, they do not require

to be sued in the name of the executor, and nothing is necessary to be done by him to perfect the gift of the money.

But not so with the delivery of a promissory note payable to order, which has been held to be insufficient to pass to the donee, the money, the thing intended to be given; upon the ground that no property in it passes by delivery, and being a mere *chose in action*, it must notwithstanding the delivery, be sued in the name of the executor. So that the gift of money is not complete at the time, the legal dominion over it, remaining in the donor, and on his death, passing to his executor, without the use of whose name it cannot be perfected.

This may seem to be technical; but if the rule is admitted, that a delivery of the thing intended to be given, is essential to the perfection of the gift, it must follow, that a promissory note payable to order, is not capable of being the subject of a *donatio mortis causa.* And if we were at liberty to do so, we should not be disposed to relax the rule, which would be to open still wider, the door already sufficiently wide, to frauds and perjuries, and the exercise of undue influence by the artful and designing, upon the weak and unwary.

There has been an exception to the rule, in the case of a bond. In *Snellgrove vs. Baily*, 3 *Atk.* 214, the delivery of a bond was held by *Lord Hardwicke*, to be a good *donatio mortis causa.* And in *Ward and Turner*, 2 *Ves. Sr.* 431, he assigns as reasons for that decision, "that he who has possession of a bond, may destroy it, the consequence of which is, that it puts it in his power to destroy the obligee's power to bring an action, because no one can bring an action on a bond without *a profert in curia*," and "that the law allows it a locality, and therefore that it is *bona notabilia*," and adds, "that this is conclusive." And in *Gardner vs. Parker et al.*, 3 *Mad. Ch. R.* 102, the Vice Chancellor, relying upon *Snellgrove vs. Baily*, made a similar decision.

In *Duffield vs. Elwes,* 1 *Sim. and Stewart,* 239, the Vice Chancellor said, he considered "the case of a bond to be an exception, and not a rule." The reasons assigned by *Lord Hardwicke* for his decision, that a bond is the subject of a *donatio mortis causa,* do not exist here, and whether the distinction prevailing in *England,* between the case of a bond, and a promissory note to order, (the force of which is not now perceived,) should be adopted here, it will be time enough to dertermine when the question shall be brought before us.

DECREE AFFIRMED.