Waring's Adm'r *vs.* Edmonds.

---

# Thomas Waring, Adm'r of Deborah Waring, vs. Rebecca Edmonds.

A party in her *last illness*, and in *expectation of death*, gave to her sister, then *present*, a *negro girl*, also *present*, by telling the girl "there is your mistress," (pointing to her sister,) "you must be a good girl, and obedient to her." Held: that this was sufficient proof, not only of a gift, but of *actual delivery*, and was a valid *donatio mortis causa.*

A party in her *last illness*, and in *expectation of death*, requested a friend, then *present*, and who had the care of two negro children belonging to her, to deliver, after her death, these children to her sister, who was also present, stating that she had given them to her, and according to this request, the negroes were, after her death, delivered by the friend to the sister. Held:

That this also was a valid *donatio mortis causa*, completed by an effectual delivery, the friend in whose care the negroes were, being the dying person's constituted agent and trustee to make the delivery.

A *sealed bond* of a *third person* in favor of the deceased, is the subject of a *donatio mortis causa*, and may be so disposed of, without an assignment *in writing.*

APPEAL from the Circuit Court for Prince George's county.

This was a case of issues sent from the orphans court to the circuit court for Prince George's county. These issues were framed under the act of 1831, ch. 315, sec. 12, upon petition filed by the appellant and answered by the appellee. They raise the question of *concealment*, and also whether the property referred to (consisting of a *bond* or sealed note for $1000, executed by Washington J. Beall, in favor of the appellant's intestate, and three negro slaves, *Louisa*, aged about ten years, *Maria*, aged about four or five years, and *Emeline*, aged about eight years, also the property of the intestate) was given and delivered by the intestate to her sister, the appellee, as a *donatio mortis causa*. The allegations of the petition and answer, and also the several issues framed thereon, are fully stated in the opinion of this court.

*Exception.* At the trial of these issues, evidence was offered, which is fully set out in the opinion of this court, and thereupon the plaintiff asked the court to instruct the jury, that unless they find from the evidence that the note of Washington J. Beall, mentioned in the 2nd and 5th issues, was payable to bearer, or payable to the order of Deborah Waring, and by her endorsed, and was delivered to Mrs. Edmonds by said Deborah, in her life time, their verdict must be for the plaintiff, on said issues. The defendant then asked the following instructions:

1st. If the jury believe the evidence of Dr. Sheehy, then that said evidence was sufficient to warrant them in finding a verdict for the defendant, upon the *third* issue, as to *Louisa*.

2nd. If they find, from the evidence, that negroes *Maria* and *Emeline* were, during the last illness of Miss Waring, at one of the quarters of Mrs. Beall, and that Miss Waring, during that illness; and in expectation of death, gave said negroes by parol to her sister, Mrs. Edmonds, and requested Mrs. Beall to deliver them, or see that they were delivered, up to her said sister, upon her (Miss Waring's) death, and that Mrs. Beall promised so to do, then that said evidence is sufficient to authorize them to infer, that Miss Waring constituted Mrs. Beall her agent and trustee for Mrs. Edmonds, for the consummation of such parol gift, by delivering to her said sister, Mrs.

Edmonds, after her (Miss Waring's) death, the said negroes; and if they so find, and further, that in conformity with such request and promise, Mrs. Beall, after the death of Miss Waring, delivered said negroes to Mrs. Edmonds, who took possession of them away, then they must find for the defendant upon the *fourth* issue.

3rd. If the jury find, from the evidence, that Miss Waring, before her death, and in expectation thereof, had given the note, specified in the issues, into the possession of her sister, Mrs. Edmonds, and that it remained in the possession of Mrs. Edmonds until after the death of Miss Waring, then there is sufficient evidence from which to infer all things necessary to make such delivery valid as a *donatio mortis causa*, and if they so infer, then they must find for the defendant upon the *fifth* issue.

4th. If the jury find, from the evidence, that the negroes in question were at Mrs. Beall's, or quarters, and that Miss Waring, in her last illness, had, in expectation of death, made a parol gift of them to her sister, Mrs. Edmonds, and constituted the said Mrs. Beall her agent and trustee for Mrs. Edmonds, to deliver them after her (Miss Waring's) death, and that Mrs. Beall did so deliver them, and that Mrs. Edmonds took possession of them, then they must find for the defendant upon the *third* and *fourth* issues.

5th. If the jury, upon the evidence detailed in the third and fourth instructions, find for the defendant upon the third, fourth and fifth issues, then upon such evidence, if believed by them, they must find for the defendant upon the *first* issue.

The court (CRAIN, J.) rejected the plaintiff's prayer, and granted all those of the defendant. To this ruling the plaintiff excepted, and appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Daniel C. Diggs* for the appellant:

1st. In the case of *Bradley vs. Hunt,* 5 *G. & J.,* 60, the Court of Appeals say, "the reasons assigned by *Lord Hard-*

*wicke,* in *Snellgrove vs. Bailey,* 3 *Aik.*, 214, for his decision, that a *bond* is the subject of a *donatio mortis causa,* do not exist here.'' Since that decision, there has been no case in this State in which this point has been expressly decided. In *Hebb vs. Hebb,* 5 *Gill,* 506, the court decided that there was no proof of the *delivery* of the bonds as a *donatio mortis causa,* even if they were the subjects of such a gift, but they *do not decide* that they were the subjects of such a gift. There is the same defect in the proof in this case, in reference to the delivery of this bond; it is only of what the intestate said *she had* done at some *previous time;* that she *had given*—when or how long previous to her last illness, *non constat*—this bond to her sister. See also, on this point, 1 *Bligh.*, 524, *Duffield vs. Elves.* It is, therefore, insisted, that the *prayers* in reference to this bond, on the part of the defendant, should have been rejected, and that on the part of the plaintiff granted.

2nd. Neither was there sufficient proof of the *delivery* of the *negroes* as a *donatio mortis causa.* As to what will constitute such a gift, see 1 *Wms. Exc'rs,* 498; 5 *Gill,* 509, *Hebb vs. Hebb.* As to what *delivery* is necessary, see 5 *Gill,* 461, *Anderson & Worthington vs. Hammond.* The proof here makes out no such *delivery* as is necessary to perfect such a gift. Two of the negroes were not in the possession of the intestate, and, therefore, could not be delivered, for there can be no such thing as a *constructive* delivery in such a case; it must *accompany* the gift. The defendant's prayers do not state the law correctly, and, besides, are not sustained by the proof, and should, therefore, have been rejected.

*Oliver Miller* and *Saml. H. Berry* for the appellee:

1st. The legal proposition asserted by the plaintiff's prayer is, that a *bond* cannot be the subject of a *donatio mortis causa,* the only authority for which is, the doubt expressed in the case of *Bradley vs. Hunt,* 5 *G. & J.,* 60, whether the distinction, admitted to be the law of England, between a *bond* and a promissory note to order, *not endorsed,* prevails in this State. The court expresses no opinion upon the subject, but say they will determine the question when it shall arise. In

the subsequent case of *Hebb vs. Hebb*, 5 *Gill*, 506, the question did arise, being a controversy in reference to *bonds* alone, and though the case of *Bradley vs. Hunt* is there referred to on other points, nothing is said about this doubt, which, had the court adopted it, would have disposed of the case. By deciding that case upon the insufficiency of the evidence, the court admit, by the strongest implication, that had the evidence been sufficient on the point of delivery, the *bonds* would have passed as *valid* gifts. That a *sealed bond* or note is the subject of such a gift, is fully sustained by the authorities. 3 *Atk.*, 214, *Snellgrove vs. Bailey.* 2 *Ves.*, *Sen.*, 431, *Ward vs. Turner.* 3 *Madd. Ch. Rep.*, 102, *Gardner vs. Parker.* 1 *Bligh.*, 497, *Duffield vs. Elwes.* 3 *Binney*, 366, *Wells vs. Tucker.*

2nd. That the testimony fully sustains the *gift* and *delivery* of the negro *Louisa*, is, we think, sustained by all the authorities. 3 *H. & J.*, 493, *Sprigg vs. Negro Presley.* In regard to the *other negroes*, we insist that the prayers on the part of the defendant correctly announce the law upon the subject of such gifts; that delivery need not be directly to the donee, but must be according to the manner in which the particular thing is susceptible of being delivered; that delivery to an agent or trustee for the donee, or constituting a party in whose possession the thing is, as agent or trustee to make such delivery, is just as valid and effectual as delivery directly to the donee himself; and that such a gift and delivery need not be proved by witnesses who actually saw the gift made and the delivery accomplished, but may be inferred from facts and circumstances. 2 *G. & J.*, 208, *Pennington vs. Gittings.* 5 *G. & J.*, 54, *Bradley vs. Hunt.* 5 *Gill*, 500, *Hebb vs. Hebb.* 6 *Md. Rep.*, 274, *Cox vs. Sprigg.* 3 *Md. Ch. Dec.*, 266, *Hitch vs. Davis.* 3 *H. & J.*, 493, *Sprigg vs. Negro Presley.* 3 *Gill*, 278, *Isaac vs. Williams.* 5 *Gill*, 449, *Worthington vs. Shipley.* 5 *Gill*, 461, *Anderson vs. Hammond.* 4 *Cushing*, 87, *Sessions vs. Moseley.* 10 *Johns.*, 302, *Grangiac vs. Arden.*

3rd. The above positions assume that *all* these *issues* were properly framed, but it is now insisted that the *three last* were

mere nullities, because the orphans court had no *jurisdiction* to try a *question of title* to personal property between an administrator and a *third party*, not claiming as *legatee* or *distributee*, but by a title altogether paramount, the *testamentary system*. The act of 1831, ch. 315, sec. 12, authorizes issues to try the question of *concealment* only, not of *title*, and we insist the orphans court had no jurisdiction to try a question of title like this. 9 *Gill*, 480, *Spencer vs. Ragan*.

4th. But should the court consider the several prayers in this case, and find defects in any *one* of them, it will not reverse as to any issue except that affected by the erroneous prayer. The practice in case of issues, is entirely different from that in cases to be followed by *judgments*. In the latter the appeal is from the *judgment* as an entirety, whilst in the former the appeal, under the act of 1832, ch. 208, is from the rulings of the court upon the *several propositions* presented. In this case there are *three distinct* parcels of property, about which distinct issues are framed, and there are separate and distinct findings of the jury upon each issue. The finding upon any one issue will not, therefore, be disturbed by an erroneous instruction given upon a prayer relating solely to another and distinct issue. For instance, if the court should be of opinion that the law was with the plaintiff as to the *bond*, and with the *defendant* as to the negroes, they will only reverse the findings upon the issues relating to the *bond*, and leave those as to the negroes to stand, and be certified to the orphans court, and so in regard to the negro *Louisa* and the other two, whose cases depend on different facts and distinct issues.

LE GRAND, C. J., delivered the opinion of this court.

This is a case of issues sent from the orphans court to the circuit court for Prince George's county. The record shows that the appellant filed his petition in the orphans court, alleging that he was the brother of his intestate, who died possessed of certain negroes, and a sealed note for $1000, executed in her favor by one Washington J. Beall, and that the appellee "hath concealed, and doth conceal," three negroes, viz.,

Louisa, Maria, and Emeline, and the sealed note for $1000. The appellee answered, by admitting that the intestate was, just before her death, seized and possessed of the property mentioned in the petition, but "denies that she does now, or ever has, concealed any property or *chose in action,*" and "claims title" to the whole of said property, as a *bona fide* gift from the intestate, by virtue of which she took said negroes and bond, or *chose in action*, and now is, and has been, in the possession thereof. The answer further states the circumstances under which the gift was made, claiming it to be a case of *donatio mortis causa.* On the coming in of this answer, on application, issues, five in number, were framed, and sent to the circuit court for trial. It is from the ruling of the circuit court, on said trial, that this appeal is taken.

The 1st issue propounded the inquiry, whether the appellee concealed the negroes? The 2nd, whether she has concealed the sealed note of $1000? The 3rd, whether the intestate did give to the appellee the negro girl, Louisa, as a *donatio mortis causa?* The 4th, whether the intestate did give to the appellee the negro girls, Maria and Emeline, as a *donatio mortis causa?* And the 5th, whether the intestate did give to the appellee the sealed note for $1000 as a *donatio mortis causa?*

At the trial, it was proven that Miss Deborah Waring was the companion and house-keeper of Mrs. Martha Beall, at whose house she died, and that she was possessed of the property mentioned in the issues. It was also shown, that Miss Waring had great attachment to her sister, Mrs. Edmonds, the appellee, and that the latter had been attentive on more occasions than one, when Miss Waring was sick, whilst her other relatives failed altogether to visit her. On this point, Miss Elizabeth Johns testifies, "that she had not known any of the other brothers and sisters, or relations of Miss Waring, ever to visit her during her life; she saw her brother (the present plaintiff) at her funeral. That she had often heard Miss D. Waring speak of her sister, Mrs. Edmonds, affectionately; said she had been a mother to her, and she was almost a stranger to her other relations; and at her death she wished her sister to have all her property. That in her last illness,

seeming conscious of her condition, Miss Waring sent for witness and Mrs. Martha Bell, to her sick room, and then said, 'Cousin Martha, I have three servants, I wish them given to my sister Rebecca, (Mrs. Edmonds,) and the note I hold of Washington Beall's; I wish also given to her every thing that I have. Cousin Martha, I wish you to see that she gets them.' Louisa, who is about ten years of age, was in the room; she pointed to her, and said, 'You will see that my sister has her.'" She further testified, that at the time of this conversation, the other negroes, who were small children, were at the quarters, on the plantation. She requested Mrs. Mary Beall, at her death, to deliver them to her sister, Mrs. Edmonds, and tried to impress on her mind that such was her wish. Mrs. Beall promised she would do so at the risk of her life. Mrs. Beall delivered the negroes, after Miss Waring's death, to Mrs. Edmonds, who carried them to Baltimore. Mrs. Beall proves that she was with Miss Waring for six weeks before her death, and that, for several weeks prior to that event, Mrs. Edmonds was in attendance upon her. She continues thus, "I heard her say that she had given her sister the note of Washington Beall, the three negroes named in these issues, and all the other things she owned. She pointed to the girl Louisa, who was in the room; she requested me to see that she (her sister) had this property. She said, I have given the note to my sister, (Mrs. Edmonds.) I asked Mrs. Edmonds where the note was? She said, she had it." "*This conversation took place about* 10 *o'clock in the morning; and she, Miss Waring, died about the same time that night.*"

The attending physician, Dr. Sheehy, proved that he was with her during her last illness; that she was perfectly conscious of her situation; that about a week or ten days before her death, he make known to her her approaching end, and suggested to her to make disposition of her property by will, to which she answered, "You know, Doctor, I cannot use my hand; it is paralyzed, I could not write my name." She then asked him if she could not give her sister, Mrs. Rebecca Edmonds, her property, in the presence of witnesses? I answered, yes. She then said, I have given my sister (Mrs.

Edmonds) my three negroes.   Mrs. Edmonds was then in the room, and the negro girl Louisa; and Miss Deborah Waring told Louisa, "There is your mistress, (pointing to Mrs. Edmonds,) you must be a good girl, and obedient to her."   She sent for Mrs. Mary Beall, and requested her, after her death, to deliver the negroes to Mrs. Edmonds, who was very attentive to her in sickness.   I never saw any of her other connections there during her life.

Whatever doubt there may be in regard to the law of the case, there certainly can be none, in any just mind, as to what was the intention of Miss Waring.   If ever the wishes of a party were made manifest, they are in this case; that Mrs. Edmonds was the only person intended by her as the beneficiary of her bounty, we think no one can doubt.   If, therefore, she be deprived of it, it must be owing to some stern principle of law which works great hardship in special cases for the sake of the general, public good.   Is there any such principle?

So far as the negro Louisa is concerned, the proof is positive of not only a gift, but of actual delivery.   The donee, the subject of the gift, and the donor being all in each others presence at the time of the transaction.   If a negro be the subject of a gift, *donatio mortis causa,* it is impossible for us to perceive or imagine what defect there was in the transfer of the title to Louisa.   We think, also, that the gift of the other slaves was completed by an effectual and perfect delivery. They were referred to specifically, and although not personally present, in addition to the donee, Mrs. Bell was, in whose care they were, and who was most solemnly charged to fulfil the wish of the donor, which she equally as solemnly promised to do, and faithfully fulfilled her undertaking.   We regard her as the constituted agent and trustee to make the delivery; and we know of nothing to prevent the deceased from so constituting her.   See *Smith vs. Smith,* 2 *Strange,* 935, and cases cited in *note (a)* to *7th Johnson,* 28.

The only remaining question for our consideration is, whether a sealed bond is the subject of a gift *donatio mortis causa?*   If it be, then there is nothing to dispute about, for

the testimony shows that the bond, in this case, had been given and delivered to the appellee by the donor, under the *consciousness of her* impending dissolution, which actually took place on the same day on which she, for the last time, made the gift and acknowledged the delivery, the bond being then in the possession of the donee. The case of *Hebb vs. Hebb, 5 Gill,* 506, relied upon by the counsel for the appellant, is sufficient to show that it is competent to a person in *extremis,* by way of *donatio mortis causa,* to dispose of a bond without an assignment. In that case the gift was held inoperative, because the language of the donor was but a narrative of what he had done a long time previously, when in health. In the case before us, the party was in *extremis,* unable to write, and fully conscious of her approaching death, declaring the gift and the delivery, and also the open avowal of its acceptance by the donee.

To guard against all misapprehension, hereafter, we add, that we have very serious doubts whether the case be one over which the orphans court had jurisdiction, being a question of title and not of "concealment."

Although the second and fourth instructions given by the court, are not as clear in their expression of the law as they should have been, yet we do not perceive the appellant has, in any sense, been prejudiced thereby, and we will not, therefore, reverse the judgment because of such want of precision. We consider the testimony abundantly establishes that the single bill and negroes became the property of the appellee by *donatio mortis causa.* The gift was perfect at the time it was made, they being in the possession of Mrs. Beall, who was constituted the agent for the delivery. Her acceptance of them, as the bailee of the appellee, was, in law, a sufficient delivery to the latter. The other rulings are unobjectionable.

By authority of the 3rd section of the act of 1832, ch. 208, this court allow and render costs against appellant, to be recovered and enforced, as in case of costs awarded on appeals from judgments at common law.

*Judgment affirmed.*