On or about August 31st, 1943, Herbert S. Hollinger died and left a last will and testament in which he named his nephew, the defendant Leslie T. Hollinger, executor thereof, and residuary legatee.
In the third paragraph of his will the testator directed:
"After all burial and other expenses have been paid, I give and bequeath to my nephew, Leslie T. Hollinger, all my worldly goods and chattels which I may be heir to at the time of my death, with the exception that the envelope in my strong box be delivered to the party whose name and address appears thereon. The envelope contains a check dated Oct. 12, 1942, which check I request be honored."
The envelope containing the check dated October 12th, 1942, referred to in the will was addressed to the complainant and was for $500. The decedent, a few days before his death, drew a check dated August 27th, 1943, in her favor in the amount of $200. Both checks were drawn on a joint account standing in the names of the decedent testator Herbert S. Hollinger and the defendant, Leslie T. Hollinger.
The checks were not presented to the bank for payment during testator's lifetime. The defendant, Leslie T. Hollinger, after Herbert's death, refused to honor testator's request aforesaid and stopped payment on the checks claiming the moneys in the account belonged to him as the surviving joint tenant. He takes the position that the funds in the joint account are not part of decedent's estate. The complainant instituted an action in the New Jersey Supreme Court to recover the amount of the checks. The action came on for trial *Page 208 
in the Bergen County Circuit Court before the Honorable J. Wallace Leyden, who directed a nonsuit at the conclusion of plaintiff's case.
The defendant contends (1) that the complainant's remedy, if any, is at law; (2) and that she having elected to pursue her remedy there, is bound by her election; (3) that the checks made by the decedent Herbert S. Hollinger became void upon his death, they not having been presented for payment, since decedent's interest in the bank account upon which the checks were drawn terminated at his death; (4) that complainant is not competent to testify concerning any transaction with the decedent since suit is brought against defendant in a representative capacity; and (5) that the checks were intended as gifts and as such are void since dominion and control of the subject-matter of the gifts did not pass to complainant prior to death of decedent.
I believe in the circumstances the defendant should prevail in this proceeding. N.J.S.A. 17:9-5 appears to be pertinent. It provides that:
"When a deposit has been, or shall be, made in any bank or trust company transacting business in this state in the names of two persons, payable to either, or payable to either or to the survivor, the balance of any part thereof to the credit of said account including interest or dividends thereon may be paid to either of said persons during the life of both and in case of the death of either of said persons the balance to the credit of said account including any dividends or interest thereon shall be paid to the survivor, and the legal representatives of the one dying shall not have any claim or right thereto notwithstanding that such balance or any part thereof may have been the property of the one dying."
The money on deposit in the joint account on which the checks were drawn became the property of the defendant Leslie T. Hollinger as survivor upon the death of his joint tenant, and there is no evidence that the interest of Herbert, the decedent, was other than that of a joint tenant whose interest in the account terminated with his death. Rush v. Rush, 138 N.J. Eq. 611; 49 Atl. Rep. 2d 238. The decedent testator's will, under the circumstances, cannot control the disposition of the funds in the joint account, or direct payment of moneys therefrom. *Page 209 
Furthermore, there appears to be no evidence of consideration for the issuance of the checks. The check dated October 12th, 1942, for $500 was never delivered to complainant, and there is no testimony indicating that she had any knowledge of its existence. 8 C.J. 205 ¶ 335, states:
"Leaving an instrument in an envelope addressed to the payee among the maker's own papers with the intention to give effect to it as to a legacy on his death is not a sufficient delivery, especially where it was never brought to the payee's knowledge, or where the maker had mentioned it as deposited with a certain bank for the payee, but actually left it among his own private papers."
In 7 Am. Jur. 807 ¶ 32, appears the following:
"It is an essential ingredient of every written contract that it be delivered by the party obligating himself to someone who has a right to control it; since the delivery is evidence of the assent of the promisor and of the reception by the promisee, it consummates the contract. As a general rule, a negotiable instrument, like any other written instrument, has no legal inception or valid existence as such until it has been delivered in accordance with the purpose and intention of the parties. Inasmuch as actual or constructive delivery is the final act in the execution of the instrument, it is as essential to impart validity to the paper as is the signature of the maker. Until that is done, it is a nullity. This rule is recognized in the Uniform Negotiable Instruments Act, wherein it is prescribed that every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto."
Again, the checks were not completed gifts. They were subject to the control and dominion of the maker during his life. Vice-Chancellor Stevenson, among other things, stated inProvident Institution for Savings v. Sisters of St. Francis,87 N.J. Eq. 424; 100 Atl. Rep. 894; affirmed, 88 N.J. Eq. 349;102 Atl. Rep. 1053, that "it is well settled that a gift cannot be effected by the delivery of a check upon an ordinary bank of deposit where the drawer's account is good for the amount. The reason is, that until the check is cashed the drawer may stop payment. In such a case the donative purpose may be absolute when the check is given, and ten minutes, or ten hours, or ten days later, at any time before the check has been cashed, such donative purpose may be wholly changed and abrogated. The fundamental principle *Page 210 
of the law of gifts is that the gift to be effective must place the thing donated beyond the control of the donor. Where a check on a bank of deposit is given for value, it often operates as an equitable assignment, but such is not the case where a check is given to the payee as a pure donation." The Vice-Chancellor further declared: "Equity will not aid an incomplete gift. Until a legal gift has been effected so as to vest property in the donee, the only party who has any right calling for consideration in the transaction, is the donor, and that right is a part of the great and sacred right which the law insures to every one under certain limitations and conditions to dispose of his own property in accordance with his own wish and will."
In 7 Am. Jur. 386 ¶ 534, it is said:
"Although there are a few cases apparently to the contrary, the rule now generally adopted is that under sections of the Uniform Negotiable Instruments Act providing in effect that a check or draft, of itself, does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, an attaching creditor, receiver, assignee for creditors, or an administrator or executor of a drawer of a check or draft has a right to the funds drawn upon which is superior to that of the payee or holder, where such check or draft is not presented for acceptance or payment until after the attachment or the insolvency of the drawer or until after his death, unless such check or draft, together with other evidence, is held by a court of equity to show an assignment in fact. It may be stated as a corollary, therefore, that the clear weight of authority supports the view that the provisions of the Uniform Negotiable Instruments Act negative the character of a check or draft as an assignment, legal or equitable, not only as between the holder and drawee, but also as between the holder and persons who derive the rights from the drawer after the delivery, but before presentment to the drawee."
The views hereinabove expressed are dispositive of the pending issue, and I do not deem it necessary to discuss the other contentions above enumerated.
Under the facts I must advise an order dismissing the bill. *Page 211