No. 37,067

In re Estate of Albert Yale, Deceased (PHILLIPS UNIVERSITY, *Appellant,* v. R. B. MEDLIN, Guardian of Minnie Yale, an Insane Person; MERRITT YALE and LUTHER YALE, Executors of the Estate of A. Yale, Deceased, *Appellees*).

(191 P. 2d 906)

Opinion filed April 10, 1948.

*R. H. Thompson,* of Gove, and *J. H. Everest,* of Oklahoma City, Okla., were on the briefs for the appellant.

*J. H. Jenson* and *Corwin C. Spencer,* both of Oakley, and *Edward M. Beougher,* of Grinnell, were on the briefs for the appellees.

The opinion of the court was delivered by

BURCH, J.: The principal question presented by this appeal is whether an uncashed check given by a person before his death was an incompleted gift *inter vivos,* or was in the nature of a pledge or subscription and as such supported by a consideration developing from mutual agreement with other subscribers. A second question develops pertaining to the sustaining of objections to certain questions. The district court sustained a demurrer to the plaintiff's evidence on the theory that the check was an incompleted gift *inter vivos.*

The check was presented as the basis of a demand against the estate of Albert Yale, deceased. Written objections to the allowance of the demand were filed by R. B. Medlin as guardian of the person and the estate of Minnie M. Yale, who is an incompetent person and the widow of Albert Yale, deceased. The probate court refused to allow the demand and the claimant appealed to the dis-

trict court, naming the guardian and the executors of Albert Yale's will as appellees.

In the trial of the case on appeal in the district court, the evidence developed that the appellant, Phillips University, in October, 1945, was a religious and educational corporation and was soliciting funds which were to be used for the purpose of constructing certain buildings, including a Bible college, at the university. In furtherance of such purpose, the university had employed A. E. Elliott as a solicitor, and he and Andrew Yale, who is a son of the deceased, Albert Yale, interviewed Albert Yale with the intent of inducing him to sign a subscription agreement designated as "Phillips University Advance." During the talk among the parties, Elliott submitted to Albert Yale one of the blank subscription agreements. A copy of the blank agreement was introduced as an exhibit to Elliott's deposition. Examination of the exhibit discloses that the university was attempting to raise in seven years two million dollars for financing the construction of a Bible college building, science hall, fine arts building, and for the purpose of endowing seven chairs at $100,000 each, establishing 30 scholarships at $5,000 to $7,000 each, and for increasing its trust fund from $750,000 to $1,500,000. The subscription agreement provided a blank space opposite each of the listed projects in which the subscriber might indicate to which of the various enterprises he desired to contribute. The agreement also provided that in consideration of the gifts and payments by others for a like purpose the subscriber promised to pay a sum of $———, and provided that, unless otherwise specified, half of the subscription would be payable in cash and the remainder in two equal payments in one and two years from date.

The testimony developed also that Elliott and Andrew Yale explained to his father the whole program of the university and that Andrew Yale had theretofore subscribed $500, which money was to be used in connection with the furnishing of a room in the Bible college building to be known as the Language and Literature Room. According to the testimony of Andrew Yale, Elliott and he discussed with Albert Yale the possibility of the various members of the Yale family contributing enough money to furnish the room completely. While the testimony is rather obscure, the inference may be drawn therefrom that the cost of furnishing the room would probably amount to about $2,500, and that perhaps the various members of the Yale family would be willing to contribute such an

aggregate amount. The subscription agreement, as submitted in the record, does not refer to subscriptions to be used for the purpose of furnishing rooms but, nevertheless, the testimony indicates that Elliott and Andrew Yale were attempting to induce Albert Yale to subscribe for such a purpose in recognition of his admiration for a grandson, Onan Yale, who is a graduate minister from the Bible college of Phillips University. Regardless of the fact that the blank subscription agreement does not refer to the furnishing of rooms, it may be assumed that the furnishing thereof was regarded as incident to their complete construction and that, therefore, the two men attempted to get Albert Yale to sign the subscription agreement. Albert Yale read the subscription agreement and immediately thereafter stated as follows: "No, I won't sign anything. What I give, I will give out and out; I won't sign anything." After such statement was made, Mrs. Albert Yale suggested that perhaps it would be prudent to give Mr. Albert Yale time to think the matter over. As a consequence the soliciting parties left and after dinner Andrew Yale returned alone and asked his father if he wanted to go ahead with the donation for Phillips University and he said, "I will do that." According to the record nothing further was said at that time about the signing of the subscription agreement or about any purpose for which the money would be used. Andrew Yale testified that he made out a check for $1,500; that Albert Yale signed it and Andrew Yale took it out to the car and gave it to Elliott.

The check was introduced in evidence. It is an ordinary check, dated October 2, 1945, made payable to the order of Phillips University, in the amount of $1,500, and bears this notation: "For Gift to Phillips University." The next morning, after the check had been given to Elliott, he and Andrew Yale had another conversation and as a result thereof Elliott gave the check back to Andrew Yale in order that he might show it to other brothers and sisters who might wish to contribute something to the university. Elliott testified that he first accepted the check as the agent of Phillips University and that he handed the check back to Andrew Yale and told him to keep it for Phillips University and send it in with any other donations he might receive from the family. Andrew Yale kept the check for four or five months and sent it to Phillips University soon after the death of Albert Yale which occurred February 5, 1946. The check was never presented for payment or otherwise negotiated for value. Andrew Yale testified that in connection with the nego-

tiations he was not acting in behalf of the university but only for himself, and according to his testimony the check was held by him until after the death of his father at the suggestion of some members of the family who thought it was best to wait a little while, and that Elliott told him to keep the check "until such time as we [referring to the witness and other members of the family] felt free to send it in with other donations . . ." Albert Yale was not informed that the check was being held for any purpose and no other conversations were had with him pertaining to what use should be made of the proceeds of the check.

On appeal in this court, counsel for Phillips University contend, in substance, that the evidence establishes it was the intention of Albert Yale to contribute to the construction of the Bible college building which was one of the projects listed in the subscription agreement. Such counsel call our attention to the fact that evidence was also introduced to establish that the Phillips University had raised sufficient funds to commence the erection of the building, and they, therefore, assert that since the subscription agreement recited that the pledges made in furtherance of the plan outlined in the agreement were made ". . . in consideration of gifts and payments of others . . ." it follows that the involved check was supported by a sufficient consideration under the authority of *Cotner College v. Hyland*, 133 Kan. 322, 299 Pac. 607, and *Southwestern College v. Hawley*, 144 Kan. 652, 62 P. 2d 850. In both of the cited cases the subscription agreements were signed by the party against whose estate the claim was asserted. The contrary is true in the present case. And, moreover, the evidence clearly establishes, without contradiction, that Albert Yale specifically refused to sign the subscription agreement. Counsel for Phillips University in this case do not attempt to establish a mutual agreement among the various members of the Yale family to subscribe an agreed amount for the purpose of furnishing a room in the proposed new Bible college building, which agreement might be considered as independent of and unrelated to the general project. There is some testimony in the record indicating that it might have been possible to have furnished the room in the Bible college for $2,000, which would have been the aggregate amount of the subscription or donation which was made by Andrew Yale in the amount of $500 and the proceeds of the $1,500 check which Albert Yale signed. But there is no testimony to the effect that Albert Yale was giving $1,500 upon the con-

dition that his son, Andrew Yale, would give $500 or upon the condition that any other members of the family would contribute or subscribe any additional amount. As before stated, the positive testimony in the record is that Albert Yale said at the time he signed the check, ". . . What I give, I will give out and out; . . ." Such fact was commmented upon by the trial court in passing upon the demurrer as well as the fact that the check on its face bears the notation, "For Gift to Phillips University." As a consequence, the district court concluded that recovery should be denied in the present case under the rule that one ordinarily cannot make his own personal check the subject of a gift so that, in the absence of payment, it can be enforced against the representatives of his estate. Such rule was followed in our comparatively recent case of *In re Estate of Brown*, 159 Kan. 408, 155 P. 2d 445. The principles of law incident to the rule are fully discussed in the court's opinion by Mr. Justice Parker in the last-cited case, and there is nothing in the present case which necessitates a further statement of them.

Counsel for Phillips University further call our attention to the well-established rule that upon demurrer to evidence, a court cannot weigh conflicting evidence, and that all reasonable inferences arising from the evidence must be indulged in favor of the party producing it. We have considered the application of the rule in this case but are unable to find in the record any proper evidence from which the inference reasonably could be drawn that Albert Yale intended to provide that his contribution to Phillips University should be used for any specific purpose or be accepted upon any definite condition. The gift or subscription made by his son, Andrew, in the amount of $500, had been made before and was independent of the check for $1,500 which was signed by Albert Yale. The record presents an instance wherein it might be inferred that Andrew Yale intended that his $500 subscription and the proceeds from his father's check would be used in connection with the furnishing of a room in the Bible college. But the record does not disclose any testimony to the effect that Albert Yale directed that the proceeds of the check should be used for such purpose. In the circumstances set forth, there was clearly an absence of any mutual agreement between the deceased and any other party, which would warrant a conclusion by this court that the check was given for and in furtherance of the consideration of similar pledges made by others.

The final contention by counsel for Phillips University is that the court erred in sustaining objections to the following questions:

"Q. As I understand it, Mr. Elliott, this particular donation of Mr. Yale was to be applied on the building of a particular room in the Bible College? . . .

"Q. How much money has been raised from donors on the project of the Bible College to which the $1,500.00 of A. Yale is to be applied? . . .

"Q. How many other donors joined in the project with Mr. Yale? . . ."

The questions were objected to upon the grounds that they called for incompetent testimony, conclusions and assumptions on the part of the witness. The questions were objectionable for the reasons asserted. All of the questions embodied an assumption on the part of the witness that Albert Yale had directed that the proceeds of his check should be applied in connection with the building of the Bible college or a room therein. The conclusions were on an issue involved in the case and, therefore, the objections were properly made and sustained.

The ruling of the district court is affirmed.