## MALLOY *v*. SMITH ET AL.

[No. 313, September Term, 1971.]

*Decided May 11, 1972.*

The cause was argued before HAMMOND, C. J. and BARNES, MCWILLIAMS, FINAN, █ SINGLEY, SMITH and DIGGES, JJ.

*M. Michael Maslan* for appellant.

*Robert Paul Mann,* with whom was *Richard W. Carrell* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

What is here involved is the validity of a gift *causa mortis,* made by William H. Malloy to Sarah M. Smith and William C. Malloy, his children by an earlier marriage. Hortense A. Malloy, the widow of William H. Malloy, brought suit against the children in the Circuit Court for Baltimore County in which she sought to recover $4,900.00, the principal subject of the gift. From a judgment in the children's favor for costs, Mrs. Malloy has appealed.

Mr. and Mrs. Malloy were married in July, 1960. Shortly after their marriage, they opened a joint savings account with Provident Savings Bank in the usual trust form, *see Shaffer v. Lohr,* 264 Md. 397, 287 A. 2d 42 (1972), "In trust for themselves joint owners, subject to order of either, the balance at death of either to belong to the survivor." Since both Mr. and Mrs. Malloy were employed, each of them periodically made deposits in and withdrawals from the account.

Malloy had been hospitalized from 30 September until 17 October 1968, undergoing tests to ascertain the cause of a respiratory difficulty. He returned in January, 1969

for a 17 day stay, when the lower lobe of his right lung was removed, and was hospitalized again for nearly two months commencing 11 April, when a clot formed in the same lung, and was back in the hospital again on 18 September, where he remained until his death on 28 October. The cause of death was carcinoma of the lung.

Substantially all of Mr. Malloy's hospital and medical expenses were met by insurance coverage which Mrs. Malloy had at her place of employment. Because Malloy was unable to work during 1969 except for a short time, when his total earnings were $2,264.40, he drew sick benefits amounting to $4,700.00 from his union welfare fund, all of which went into the joint savings account.

On 25 June 1969, the balance in the account was $1,467.30, of which $1,200.00 represented a sick benefit deposited in November, 1968. On that day, Malloy deposited $3,500.00, being the second disability benefit which he had received in connection with his employment. On 14 July, he returned to the bank and withdrew $4,900.00, leaving a balance of $83.73 after a credit of interest in the amount of $16.43.

The amount withdrawn was the subject of a manager's check to Malloy's order, drawn on the bank. Malloy had the check endorsed, "Pay to the order of: Sarah M. Smith and William C. Malloy"; signed the endorsement; placed the check, the passbook for the account and a small amount of cash in an envelope which he sealed, and gave the envelope to James A. Cox, a friend. According to Cox, he received the envelope sometime in July and Malloy "* * * asked me to do him a favor, keep it, and if something happened to him to give it to his son and he would take care of his sister."

About a week after Mr. Malloy's death, Cox delivered the envelope to Mr. Malloy's son, who kept the cash and cashed the check.

Mrs. Malloy challenges the result reached below on two grounds: first, because there was no such delivery of the envelope as to put it beyond recall by Mr. Malloy. Her second point is that a check cannot be the subject of

a valid gift *causa mortis*. We shall consider these contentions in inverse order.

The cases on which Mrs. Malloy relies in support of her contention that a check cannot be the subject of a valid gift *causa mortis*: *In re Enders' Estate*, 39 Misc. 2d 207, 240 N.Y.S.2d 388 (1963) ; *In re Yale's Estate*, 164 Kan. 670, 191 P. 2d 906 (1948) ; *Straut v. Hollinger*, 139 N.J.Eq. 206, 50 A. 2d 478 (1947) ; and *In re Brown's Estate*, 159 Kan. 408, 155 P. 2d 445 (1945) are all readily distinguishable, because all involved checks on the donor's own account.

The point is, of course, that when the donor uses his own check to make the gift, there is no assignment of funds because he does not relinquish control of the sum which the check represents. A consequence of this is that a valid delivery alone will not complete the gift. To perfect the gift the check must be presented by the donee and accepted by the drawee, because the donor could stop payment, withdraw from his account the very funds which the check represents, or die before payment is made, any of which would revoke the gift. *See* Uniform Commercial Code § 3-409(1), Code (1957, 1964 Repl. Vol.) Art. 95B, § 3-409(1).

A cashier's check, or a manager's check, as here, either of which is the bank's promise to pay, is something quite different. Here, what had been funds deposited by the donor and subject to his control, were converted into an obligation of the bank, and a bank check drawn to the donee's order is no more subject to recall by the donor than would be a bearer bond or currency, if effective delivery is made, *Pikeville Nat. Bank & Trust Co. v. Shirley*, 281 Ky. 150, 135 S.W.2d 426 (1939) (holding that a cashier's check is distinguishable from an ordinary check, and may be the subject of a valid gift *inter vivos*) ; *see Pennington, Adm'r of Patterson v. Exr. of Gittings*, 2 G. & J. 208 (1830) and *Bradley et ux. v. Hunt*, 5 G. & J. 54 (1832) (which discusses the distinction between a note payable to bearer, which may be the subject of a gift *causa mortis*, and an unendorsed note payable to the order of the donor, which may not.)

Mrs. Malloy's primary contention is that a valid delivery is an essential prerequisite of an effective gift *causa mortis*. She argues that if Cox could not be the agent of Malloy's son, who might have known nothing of the existence of the envelope, then Cox must have been Malloy's agent, and if he were, the envelope was still subject to Malloy's dominion and control, particularly since the agency would be terminated at Malloy's death. She places her principal reliance on *In re Steinreich's Estate*, 133 N.Y.S.2d 137 (1954), where faced with virtually identical facts, the Surrogate's Court of Queens County concluded that the gift failed for want of delivery.

An early discussion of the elements of a valid gift *causa mortis* may be found in *Taylor v. Henry*, 48 Md. 550 (1878) where Judge (later Chief Judge) Alvey, speaking for the Court, said at 559:

"In order to render perfect a *donatio mortis causa*, three things must occur: 1. That the gift be made with a view to the donor's death; 2. That it be with a condition, either express or implied, that it shall take effect only on the death of the donor by a disorder from which he is then suffering; and 3. That there be a delivery of the subject of the donation.

"* * * In making a gift *causa mortis*, the donor does not part with the whole interest, except only in the particular event of death; and it is of the essence of such a gift, that it shall not otherwise take effect; and it remains subject to his revocation at any time before the event of death [from a cause other than the disease from which he is suffering]. But, nevertheless, it is essential, in order to give effect to the donation, that the deceased should, not only part with the possession, but also with the present dominion over the subject of the gift, subject only to subsequent revocation * * *" [in the

event that the donor does not die from the disorder from which he is then suffering].

To the same effect is *Conser v. Snowden,* 54 Md. 175 (1880), where the gift failed because there was neither valid delivery (the donor gave the appellant a withdrawal order on her savings account, but not the passbook), nor proof that the donor died of the disorder from which she was suffering at the time of delivery. This case is also authority for the proposition that a gift *causa mortis* must meet the same tests by which validity of a gift *inter vivos* is determined, 1 Sykes, *Probate Law and Practice* § 141, at 140 (1956).

Our predecessors adhered to the rigid rationale of *Taylor* and *Conser* in *Whalen v. Milholland,* 89 Md. 199, 43 A. 45 (1899) ; in *Brooks v. Mitchell,* 163 Md. 1, 161 A. 261 (1932) ; in *Garner v. Garner,* 171 Md. 603, 190 A. 243 (1937), and in *Schenker v. Moodhe,* 175 Md. 193, 200 A. 727 (1938). The practical results of this adherence have been the subject of critical comment in Note, *Requirement of Delivery in Gifts of Personalty—Schenker v. Moodhe,* 3 Md. L. Rev. 271 (1939), but we have reiterated the principles by which the adequacy of proof of intent and delivery is determined in two recent cases involving gifts *inter vivos*: *Schilling v. Waller,* 243 Md. 271, 220 A. 2d 580 (1966) ; *Hileman v. Hulver,* 243 Md. 527, 221 A. 2d 693 (1966).

While we do not intend to bend, much less depart from the hard-and-fast rule of our prior decisions, none would deny that they are to be applied in a manner which will not frustrate a clear manifestation of intent, *Jones, Adm. v. Hamilton, Adm.,* 211 Md. 371, 380, 127 A. 2d 519 (1956) ; *Miller v. Hospelhorn,* 176 Md. 356, 367, 4 A. 2d 728 (1939).

Malloy was an ill man, and must have realized that his condition was a precarious one, as the trial court found. The gift was, in a sense, subject to a condition subsequent: it was to take effect only in the event of Malloy's death in consequence of the disorder from which

he was then suffering. The first two requirements of *Taylor v. Henry, supra,* were clearly met, and if the gift is fully. executed, the fact that it does not become effective until the donor's death does not make it void as a testamentary disposition, *Howard v. Hobbs,* 125 Md. 636, 645, 94 A. 318 (1915).

There remains only the question of delivery: did Malloy part with possession of and dominion over the gift? That he parted with possession when he gave the sealed envelope to Cox is certain. When Malloy obtained the manager's check drawn to his own order and endorsed it to his son and daughter, and put it in the envelope which he sealed, it is manifest that he thought that he was doing all that he could do to complete a gift which would be effective in the event of his death. The modern rule, that delivery of a gift *causa mortis* must be as nearly perfect and complete as is possible in view of the nature of the property and the circumstances, *Brooks v. Mitchell, supra,* 163 Md. at 12; 1 Bowe-Parker, *Page on Wills* § 7.11, at 300 (1960), finds an archaic precursor in *Waring v. Edmonds,* 11 Md. 424, 432 (1857), which held that the donor's direction to a third person to deliver two slaves to her sister after her death constituted a valid constructive delivery, even though there was no manual delivery of the subjects of the gift at the time the gift was made.

Mr. Malloy's endorsement of the check was certainly overt evidence of his intention, and this alone might have been enough, in the light of *Miller v. Hospelhorn, supra,* 176 Md. at 367, where our predecessors held that manual delivery is not always necessary if constructive delivery can be implied from intent.

The leading case of *Basket v. Hassell,* 107 U. S. 602, 2 S. Ct. 415, 27 L. Ed. 500 (1883) can be readily distinguished because there, the donor restrictively endorsed a certificate of deposit, making it payable only after his death. As a consequence, the donor delivered something less than absolute title. *Pennington v. Gittings, supra,* 2 G. & J. 208, which dealt with the delivery of an endorsed

stock certificate can be similarly distinguished, because a transfer of ownership could only be made with the consent of the issuer, which was not obtained.

Malloy made delivery to a third person, Cox. Assuming that Cox could not have been the children's agent without being authorized by them, and that a delivery to Cox as Malloy's agent would have been ineffective, a third possibility remains. There is no reason why Cox, in view of the specific oral instructions given him, could not be regarded as having been constituted a trustee for the children by parol, *Pope v. Safe Dep. and Tr. Co.*, 163 Md. 239, 249, 161 A. 404 (1932) ; *Stone v. National City Bank,* 126 Md. 231, 238, 94 A. 657 (1915), provided that delivery was effected. *See Pennington v. Gittings, supra,* 2 G. & J. 208, and particularly the notes on 124-125 and 127-128 of Brantly's edition (1884). Delivery to him in his capacity as trustee would have perfected a gift *inter vivos, Curley v. Wolf,* 173 Md. 393, 397, 196 A. 285 (1938), and we regard the cases which apply the same rule to gifts *causa mortis* as enunciating the correct view, *Pikeville Nat. Bank & Trust Co. v. Shirley, supra,* 281 Ky. 150; *Smith v. Eshelman,* 235 Ala. 588, 180 So. 313 (1938) ; *Meyers v. Meyers,* 99 N. J. Eq. 560, 134 A. 95 (1926) ; *Beck v. Hall,* 211 S. W. 127 (Mo. App. 1918) ; *Innes v. Potter,* 130 Minn. 320, 153 N. W. 604 (1915) ; Thornton, *Gifts and Advancements* § 36, at 36; § 160, at 140 (1893) ; Anno., 60 A.L.R. 1054 (1929). Under all the circumstances, we see no reason to disturb the result reached below.

*Judgment affirmed, costs to be paid by appellant.*