JANE P. GOULDING *vs.* CHARLES HORBURY.

Androscoggin.    Opinion December 29, 1892.

*Gift, causa mortis.    Delivery.    Witness.*

The court adheres to the rule that has dominated its former decisions, requiring that, to constitute a valid gift *causa mortis*, there shall be clear and conclusive evidence, not only of an intention to give, but of an actual gift consummated by as perfect a delivery as the nature of the property given will admit of.

In illustration of such rule, the court holds that a delivery of the key of a small trunk containing money and bonds does not alone amount to a delivery of the contents of the trunk, although the donor designed that such a delivery should be effected thereby.

When a gift *causa mortis* is claimed, the judicial confidence is strengthened by proof that the intention to give existed for a long period before the act of giving, and especially so if such intention is proved by writing under the donor's own hand.

An old and illiterate man, with no other family than an illegitimate daughter thirty-six years old at the date of his death, had by his letters to her and in other ways manifested a strong affection for such daughter, and she was the only occupant in his house with him when he died. He had for some years made her his principal confidant in his business matters, and had frequently intimated in his letters that she would some day receive his property or the bulk of it. His estate consisted mostly of stocks, bonds, and savings bank books, of the value of some fifteen thousand dollars, which he kept in a small portable cupboard in the room where he lived. During his last sickness, while expecting death, he gave her from his pocket two wallets, containing one hundred dollars in money, and the key of the cupboard, saying that he gave her the money and the cupboard and all that was in it. She thereupon unlocked the cupboard in his presence, he seeing what she did, and after some hasty handling and examination of the papers, she locked them in the cupboard again, ever after during his sickness keeping the key in her own pocket. Soon after this on the same day, she placed some valuables of her own in the same cupboard. He had physical strength enough to have got from his bed and taken the articles and passed them to her by his own hand. He died within three days after this act. *Held;* That the jury were authorized on these facts to find a sufficient, actual delivery to consummate the gift.

Where the administrator of a donor wrongfully converts property of the donee to the use of the estate of the donor, upon the belief that the property was not legally given by the donor to the donee, he is personally liable to the donee for such conversion.

Where neither party to an action appears by the record to be an executor or administrator, nor is made (by the order of court) a party as an heir of a deceased party, either party may testify in his own behalf.

ON MOTION AND EXCEPTIONS.

This was an action of trover brought by the plaintiff who claimed that certain bonds and bank books in the possession of the defendant belonged to her as a gift, *causa mortis*. The verdict was for the plaintiff in the sum of $4800, the full amount claimed.

Under the general issue and brief statement of special matters of defense, the defendant claimed that no gift had been made, but that such claim was an after-thought; that the facts offered in evidence to support such gift did not show such delivery as is required by the rule of law as settled by the courts of this State; and that the defendant being an administrator, the plaint-

iff was not a competent witness to anything which happened prior to the death of the alleged donor.

The case is stated in the opinion.

*McGillicuddy and Morey*, for plaintiff.

*Newell and Judkins*, for defendant.

Counsel cited: *Drew* v. *Hagerty*, 81 Maine, 231, and cases cited in argument; also *Gano* v. *Fisk*, 43 Ohio St. 462 (54 Am. Rep. 819); *Powell* v. *Hellicar*, 26 Beav. 261; *Seabright* v. *Seabright*, 28 W. Va. 212.

PETERS, C. J.    Some of the facts of this case should be stated in order to appreciate the pending questions.    Thomas Pemberton, over whose property controversy has arisen, died at Sabattus in this State in May, 1891, then seventy-two years old.    He never was married, and he left no will.    Jane Pemberton Goulding, his illegitimate daughter, born in England and living there until she became thirty-four years old, in April, 1890, came to this country to live with him.    At the time of his death he owned a small house in Sabattus, all of which he rented excepting the basement which was his kitchen and the attic room in which he and his daughter slept in separate beds.    He was for a life-time industrious and saving, being evidently a man of miserly habits, and up to the time of his death had amassed an estate amounting to fifteen thousand dollars or more, consisting mostly of stocks, bonds and savings bank books.    In a corner of this attic room was a small portable cupboard, so called by the witnesses, brought by him from England when he first came to this country thirty to forty years ago, in which he kept his valuables of a moneyed kind and any other papers he had. His habit was to keep the cupboard locked with the key in his pocket.

He was taken sick on a certain Saturday and died on the Wednesday following, occupying his bed from the first to the last of his sickness.    The plaintiff claims that on Sunday during his last sickness, while expecting and awaiting death, he gave her about fourteen thousand dollars worth of stocks, bonds

and bank books which were at that time in this cupboard. The present action is one of trover brought by her for a portion of such property against the defendant who is the administrator of her father's estate. Upon her story as a witness her right of recovery mostly depends.

Her testimony is lengthy, but the most material portion of it is presented here, as follows: "I was just giving him [her father] a cup of tea and he got hold of his pants that were on his bed and he felt in his pockets and took his two old wallets out and the key of the corner cupboard. He said, 'Here, Jane, take these,' he says, and take this key of the corner cupboard. It is thine: and all that is in the corner cupboard is thine, and don't let any one take it from thee for thou art mine and I am thy father.' . . . He said, 'Now, Jane, don't let no one take them off thee, they are thine, and put thy foot down and say that everything of thy father's is thine, and don't let any one take them of thee.' . . . I just went to the cupboard and looked in and took them in my arms and looked them over, and all the bonds were lying on the bottom of the cupboard and I looked at them and put them back again. Then I got the bank books and looked at them and put them back again. There was a bundle of papers all strung up with strings and I did not unfold them and did not examine them, but I put them back again; and I never troubled them afterwards until Mr. Levi Wooley came."

She further testified that after locking the cupboard, she placed the wallets, containing about one hundred dollars in money, and the key in her own pocket where they remained until her father died; that she had never had the key before this in her possession, but had been sent with it by her father to get papers from the cupboard for him; and that she placed some valuables of her own in the cupboard the same Sunday after the donation was made. Of this latter matter she said: "In the afternoon I went to my trunk and I put my two bank books in the cupboard. I thought I would lock them all up together; my father was so sick; there wasn't any safe place only this in the bedroom, in that corner cupboard." On cross-

examination she said her father was not too feeble to have got up and gone to the cupboard himself, and that he had a full view of it and was within a few feet of it as he was situated in his bed.

It cannot be pretended that there was any unnaturalness in his giving her the bulk of his estate. She had for many years been acknowledged by him as his daughter. He visited England several times to see her and her mother, tarrying with them there for months at a time. His letters express great sympathy and affection for his child. And they contain many intimations, if not avowals, that she might expect to receive his property at some time. He imparts to her confidential information, in his indirect way of saying and doing things, as to the amount of his property, an admission which he says he never made to any one else. The free interchanges in their correspondence resulted in her hastening to join her father in this country as soon as she got released from obligation to remain with her mother in England. Before she came here he had placed fifteen hundred dollars at interest in the other country, the income of which she received for the benefit of herself and her mother. And on leaving this country in 1888, for a visit across the water, he left a written order to a savings bank where he had four thousand dollars on deposit, besides accumulated interest due thereon, directing how the funds should be appropriated in case of disaster to him before his return, which paper may as well be incorporated herewith as reference will be made to it again ; the paper running thus :

"dec 27, 1888

to Androscoggin<br>County Savings Bank<br>Lewiston Maine<br>to the President and Trustees<br>and treasurer Mr. frank w. Parker

i Thomas. Pemberton of Sabattus maine i am seting sail for England on the 27 of december 1888, and if i do Not Land Safe Back to Sabattus Please Pay the whole amount of my deposits and interest due me in this County Saving Bank to my order in

Both Books No. 558, and No. 1487 for it All Belong to Thomas Pemberton Not to Annie Wooley. Please to Pay it to my daughter, Jane Pemberton Goulding at No-12 wilson Brook kingston Hyde, Cheshire near manchester England By order of Thomas Pemberton Sabattus me " ·

In sustaining gifts *causa mortis* where the question of delivery is depending, it is a relief to feel that the donor had, for some time before the act was done, intended to make the gift; and it adds very much to the judicial confidence when that intention is manifested by some writing signed by the donor. Where the intent of the donor is proved under his own hand, the danger or likelihood of perjury is very far less than when the gift is claimed upon parol evidence unsustained by any writing. A court would be disposed to examine the one case less critically than the other. See *Brinckerhoff* v. *Lawrence*, 2 Sand. Ch. 400, 406.

It cannot be denied that Thomas Pemberton not only intended to bestow the most of his estate upon his daughter, but that he died with the belief that he had done so; unless we accept the theory of the defense, ably presented at the argument, that all his declarations apparently to that effect, made after that Sunday, referred to the paper lodged with the Androscoggin County Bank, with his supposed meaning of that paper, and not to the transaction testified to by the plaintiff. Her conduct after her father's death gives a good deal of plausibility at least to the defendant's position in that respect. Still, the testimony of the two neighbors of the deceased who were called in by him on the day before he died, and that of the attending physician, as to his declarations on this matter, corroborated as such testimony is by the same conception expressed in his letters, furnishes evidence of a contrary character not to be easily overcome. At all events, the letters present impregnable proof that the donor during a long period in his life-time contemplated making the daughter the principal, if not the sole, recipient of his estate.

The defense contends that, whether there was any intention to give or not, there was no perfected gift, even if the plaintiff's testimony be fully believed; that any such intention was

not followed by a sufficient actual delivery. On this point the presiding judge gave the jury the following ruling: "If, in contemplation of death at that time as the result of that sickness, Thomas Pemberton decided to make a gift of his property to his daughter, this plaintiff, and for that purpose delivered to her the key to the little cupboard, the cabinet, or closet in the corner of the room where they then were, for the purpose, I say, of enabling her to take possession of the property as her own, and with the intention on his part then and there to part with all dominion and control over the property, to release all right and claim ever after to resume possession of it again unless he recovered, and she used the key for that purpose and then and there accepted the property as her own and took it into her own custody and control, retaining the custody of the key ever after, and placing in the cupboard with this property, property which she had previously held in another place as her own, in her own custody; and if you find that in thus delivering the key to her, he placed it beyond his power to resume possession of this property otherwise than by the extraordinary means of breaking open the lock, and that he then intended it as an actual transfer of possession of all the property in the cupboard, subject only to the condition of his recovery from that sickness, you would be authorized, if you believe all the testimony tending to support these propositions, to find it a sufficient delivery and transfer of possession to constitute a valid gift in contemplation of death.

"You must determine precisely what significance shall be attached to that act of delivering to her the key, with the remarks made in connection with it. The mere delivery of the key as a symbol of the property would not be a sufficient delivery, but only as a means of transferring the possession; when it is actually used for that purpose and the possession is actually transferred, that would constitute a valid and sufficient delivery."

The defense relies on a series of decisions in our own State, the last of which is the case of *Drew* v. *Hagerty*, 81 Maine, 231, where all the preceding authorities are cited, as establish-

ing the general doctrine that to constitute a valid gift *causa mortis* there must be clear and unmistakable proof, not only of an intention to give, but of an actual gift consummated by as perfect a delivery as the nature of the property given will admit of. And particular reliance is placed by the defense upon the practical application made by the court of such doctrine in *Hatch* v. *Atkinson*, 56 Maine, 324, where it was held that the delivery of a key of a small trunk containing money and government bonds, would not be regarded as a delivery of such money and bonds, although such was the purpose and design of the donor. We are aware that the case of *Hatch* v. *Atkinson*, goes further than some of the decided cases in strictly applying the principle, as may be seen in a note to the case of *Thomas* v. *Lewis*, lately decided by the Supreme Court of Virginia, and reported in the Am. Law Reg. Vol. 31, p. 662 ; but we can see no reason for dissatisfaction with the rule which was deliberately applied by this court to the facts of that case, a rule which has been followed in many reported and unreported cases since. The delivery of a key to a trunk is by no means so expressive and significant an act as a delivery of the articles contained in the trunk. One kind of delivery is more in the words spoken and the other more in the act done. It is easier to falsify as to words than as to an act, and the temptation to do so is greater and the chance of exposure less. Keys are things too easily to be obtained from a dying man to allow the slightest importance to be attached to a mere possession of them as evidence of property. A claim to a trunk is more general, and a claim to the contents usually more particular. Strict rules in this branch of the law are absolutely indispensable. There is not a court in the civilized world that does not look with disfavor and suspicion on death-bed gifts established on parol evidence. The public should be educated as far as may be to the habit of making testamentary dispositions.

By these practical standards, therefore, must the plaintiff's very important claim stand or fall. If we give full faith and credit to that portion of her testimony which has been already herein quoted, the court is of opinion that her claim may be

sustained.　The facts of this case are more favorable for establishing a delivery than were those exhibited by the testimony in the case of *Hatch* v. *Atkinson*, *ante*.　In that case the testimony was more or less contradictory and suspicious.　The claimant was presumably not a relative of the donor.　Had the claim succeeded it would have resulted in a complete family despoliation.　And the manual delivery was of the trunk and key and not of any articles in the trunk.

Here the gift was a natural one, and had been evidently contemplated for many years before the donor's final sickness. His letters repeatedly intimated if they did not promise some considerable gift.　And during his last sickness he declared and emphasized his intention in the presence of some of his neighbors. The only real question must be whether there were acts enough done to constitute actual manual delivery within the letter and spirit of the rule hereinbefore enunciated.　The donee received the wallets, a portion of the property given, from her father's hand and transferred them to her pocket.　She took from him the key with which she unlocked and afterwards locked the little private cupboard.　The donor had strength enough to have done those acts himself.　But they were done before his eyes and by his direction.　The articles within the cupboard were taken up and handled by the donee.　And she knew at least in a general way what the articles were.　She placed within the same receptacle on the same day certain savings bank books of her own, which before that time she had kept in a small tin trunk owned by her.　She kept the key ever afterwards until the donor died, exercising the same care and dominion over the cupboard and contents as any owner would.　To be sure, there might have been a little more formality observed by his taking the papers in his own hands first and then passing them to her. The distinction is, however, a delicate one, and under all the circumstances may be regarded as unessential.　Any lacking of the strictest formality is made up by the corroboration before mentioned.

We think the instruction, in the light of the facts we have reviewed, was correct.　The judge stated what would be the consequence of such a delivery of the articles, "if accepted by

the donee," meaning, no doubt, by the term acceptance the receiving and keeping the articles in the manner and under the circumstances testified to by the donee.

Any formality omitted in the delivery by him was made up in the acceptance by her in his presence. The substance of the rule, if not its strictest letter, was respected in the transaction.

But it is strongly contended by the defendant's counsel that the plaintiff's testimony is not trustworthy, and that her conduct and conversations subsequently to the death of her father were so inconsistent and conflicting with her present story that the alleged gift cannot be considered, as it must be to be valid, as established by clear, convincing and conclusive evidence. There is no doubt that a serious question of fact is involved in a determination of the case, but space cannot be spared in a judicial opinion to present the evidence or argument on that issue. It is sufficient here to say that the court, with some hesitancy on the part of some of its members, is of the belief that the necessary facts are proved to entitle the plaintiff to retain the verdict which the jury accorded her.

Another question arose at the trial, the defendant contending that the action should, even if the gift is to be regarded as proved, be brought against him in his representative capacity as administrator of the donor instead of against him personally. That position cannot be safely admitted. The consequences would in many cases be very harsh and unjust were that principle to prevail. The defendant must administer upon the donor's property and not upon the donee's. Your executor or administrator is entitled to the possession of your and not my property.

Another question was an incident of the trial, the counsel for the defendant insisting that, as the question of title is one between the donee and the heirs of the donor, both parties claiming under the same person, the donee was not a competent witness in her own behalf to testify to any facts occurring before the death of the donor, and that the litigation is the same in effect as if it were between the plaintiff and the administrator. There is confessedly a good deal of force in this position. But it is now a settled question, and will probably remain so unless

legislative interference changes it, that where neither party is an executor or administrator in the record, nor is made (by the act of court) a party as heir of a deceased party, either party may testify. *Gunnison* v. *Lane*, 45 Maine, 165 ; *Nash* v. *Reed*, 46 Maine, 168 ; *Wentworth* v. *Wentworth*, 71 Maine, 72. What the right of the parties might be as witnesses were the action against or in favor of Horbury (present defendant) as an administrator would be another question.

*Motion and exceptions overruled.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.