PAUL SCHENKER, Administrator, *v.*
CHARLOTTE MOODHE
[No. 60, April Term, 1938.]

194

*Decided June 29th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Michael J. Manley,* with whom was *Samuel J. Gaboff,* on the brief, for the appellant.

*Hartwell M. King,* for the appellee.

SHEHAN, J., delivered the opinion of the Court.

Edward J. Coleman died on the 17th day of June, 1937, leaving an estate of approximately twelve thousand dollars. He left no relatives, and Dr. Paul Schenker, a coroner of Baltimore City, was appointed administrator, and took possession of the decedent's estate. Charlotte Moodhe, the appellee, filed a second amended bill of complaint against the administrator and Paul Schenker, individually, and as coroner of Baltimore City, to compel the defendants to surrender to her property alleged to have been given to her by the decedent. The defendants demurred to the bill and, from an order overruling the demurrer, this appeal is taken.

The questions presented are whether the facts alleged are sufficient to support an inference of either gift *causa mortis;* a gift *inter vivos;* or of a gift by way of a declaration in trust. If the bill can be supported on any one of these three grounds, the ruling of the chancellor must be affirmed. For the purposes of the demurrer, all the facts alleged and well pleaded, together with the inferences to be fairly drawn therefrom, are accepted as true.

This case should be considered in the light of the principles relating to gifts stated by Judge McSherry in *Whalen v. Milholland,* 89 Md. 199, 43 A. 45, and full consideration should also be given to the pronouncements of Judge Offutt in *Brooks v. Mitchell,* 163 Md. 1, 161 A. 261. The validity of the alleged gifts depends upon the legal sufficiency of the deliveries.

It was stated in the former case that: "These deathbed donations, to be upheld, ought to be above question or suspicion at all times, but more especially when they render inoperative, as they would in this case, the provisions of a will made at a calmer and more collected moment. The evidence to support them ought to be clear and free from uncertainty, for the temptation to seize upon disjointed sentences, uttered when the physical frame is prostrated and the mental faculties are failing, and to convert them into a deliberate gift of the bulk of a dying person's estate, might be too often yielded to,

under the influence of interest or the promptings of avarice, and produce most grievous wrongs. The facility with which such gifts sometimes are proved is suggestive of great caution in weighing the evidence adduced to sustain them. To doubt them ought to be to deny them. 'Around every other disposition of the property of the dead the legislature has thrown safeguards against fraud and perjury. Around this mode (*donatio mortis causa*) the requirement of actual delivery is the only substantial protection, and the courts should not weaken it by permitting the substitution of convenient and easily proven devices.' *Keepers v. Fidelity Co.*, 56 N. J. L. 302, 28 A. 585. Mindful of the facility with which, after the alleged donor is dead, fraudulent claims of ownership may be founded on pretended gifts of his property asserted to have been made while he was living, it is but a salutary precaution which demands explicit and convincing evidence of every element needed to constitute a valid donation, whether it be a donation *inter vivos or mortis causa*. Even then fraudulent claims may prevail, but the rigid requirement of the clearest proof will at least diminish the number."

Though delivery is essential to a valid gift, it may be either actual or constructive, but to be a valid constructive delivery it must be as defined in *Brooks v. Mitchell, supra*, where it is said (page 266) : "To be valid, a constructive delivery must not only be accompanied by words sufficient to show a donative intent, but must be of such a character as to completely divest the donor of dominion and control over the donation and to place it 'wholly under the donee's power.' *Pomeroy, Eq. Jur.*, sec. 1149."

Following are illustrations of this rule: Where a donor gave to the donee a sealed package informing him that it contained bank books and money; an insurance policy; the key to a trunk; the key to a safe deposit box, accompanied by an order for its delivery; the key to a cupboard; a trunk, box or other receptacle containing bank deposit book; a suit case containing valuable property.

Other cases illustrating the application of the rule are to be found in *Pomeroy Eq. Jur.*, sec. 1149, and 18 *L. R. A.* 170, and 40 *A. L. R.* 1255. "The rule as thus stated is subject to this qualification, while the delivery may be constructive, it must be as nearly perfect and complete as the nature of the property and the attendant circumstances and conditions will permit" (28 *C. J.* 692), "and many of the cases in which the courts have held a constructive delivery insufficient turn upon that qualification."

It is settled in Maryland that there is no difference in the legal essentials of a good delivery in gifts *inter vivos,* and gifts *causa mortis,* but there is this added requirement, in establishing gifts *causa mortis,* that they must be made under the influence of the donor's belief that his death is imminent, and there is also attached to such gifts a condition, express or implied, that they shall take effect only on the death of the donor. *Conser v. Snowden,* 54 Md. 175, 183; *Taylor v. Henry,* 48 Md. 550.

The transaction between Mr. Coleman and Mrs. Moodhe, on the 14th day of June, as alleged in the declaration, satisfied this requisite, for the bill alleges, "that on the evening of June 14th, 1937, the said Coleman told your oratrix that he would not be there after that week. He realized that death was imminent and that he could not be cured. He then told her that he had purchased and paid for a burial lot in Oak Lawn Cemetery and that she would find receipt for the same on the table among other papers * * *, he knew that death was imminent at the time as he said he would not live two days longer." True to his prediction he died on the morning of the 17th of June, 1937. There can be no doubt that the attempted gifts of his property were made in anticipation of his early death and because of that expected event.

The legal sufficiency of the alleged deliveries is the question now to be considered. Conceding the allegations to be true, were there gifts *inter vivos, causa mortis,* or in trust?

With regard to the situation of the parties we find the

plaintiff and the decedent living next door to each other; the one, a man sick unto death and fully realizing it, calling for assistance to a neighbor who had been helpful and kind to him for several months, and then telling her, three days before he died, of his plan to compensate her, and how certain of his property and effects should be disposed of, and disclosing where such property and effects could be found. These parties were not related.

The bill alleges:

"That on several occasions prior to June 14th, 1937, while aiding and assisting the said Coleman, your oratrix was told by him that for her many kind deeds and favors shown him, she would not go unforgotten, that she would be remembered by him and that she would finally be taken care of by him.

"7. That on the evening of June 14th, 1937, the said Coleman told your oratrix that he would not be there after that week. He realized that death was imminent and that he could not be cured. He then told her that he had purchased and paid for a burial lot in the Oaklawn Cemetery and that she would find a receipt for same on the table among other papers. He then directed her to the places where he had secreted his papers, bank books and other valuables as follows: Papers and valuables in his traveling bag, papers and bank books under the seat of the green arm-chair, and the papers on the table, all of which were in the front room first floor of his home. He also told her that she would find the number of his safe deposit box among the said papers. That she should take and hold said book, papers and other valuables as well as the contents of his safe deposit box for the purpose of paying his funeral bill and other expenses and the balance or remainder thereof he wanted her to have as her own for the favors and services she had rendered in his behalf.

"8. That your oratrix has been advised that said gifts were in the nature of a trust for the payment of his debts with remainder over to her individually."

The bill alleges that this statement was repeated and

that, when the deceased was being taken from the house to the ambulance, "he called upon your oratrix to go into the pocket of his trousers hanging upon a chair in his front room and take possession of his keys therein. Fearing to touch his clothing she refrained to get the keys in question. She was then advised to keep watch upon his home; this she did until further need was no longer required." The appellee alleges that the reason for not taking possession of the property mentioned was the warning she had received as to the contagious character of the malady of Mr. Coleman. On the morning of the 17th of June, 1936, she was informed that Mr. Coleman had died. She then called the Police Department, which took charge of the property in question and later delivered it to the administrator.

Conceding all of this to be true, is it sufficient to constitute a gift of either class? We think not. There must be another step. An actual or constructive delivery must be effected, placing the property beyond the dominion and control of the donor and within the dominion and control of the donee. Whatever his wishes and plans may have been, the fact remains that he did not in any manner or by any means change his property from the place where it was or the condition or manner in which he possessed it. While he attempted to surrender or relinquish control of it, she did not receive it or assume dominion of it. At any time before his death he could have taken it, and exercised every act of ownership over it. There may be a constructive delivery without manual tradition where, from the very nature of the subject of the gift, it may not be transferred or delivered in kind, but, nevertheless, something must be done to put the donee in possession of it, or transfer to him actual control and dominion over it. *Taylor v. Henry, supra,* at page 558.

As distinguished from the illustrations in *Brooks v. Mitchell, supra,* in the instant case there was no delivery of the savings bank book; no delivery of the key to the lock box; no delivery of other keys, including that to

the house or room wherein he lived; no delivery of the suit case containing valuables. Nothing was done that would constitute actual or constructive delivery of the property as above defined.

He told her to get his keys and she did not; he told her to take care of the house, but she did not have the key to it; he told her where his papers were but she did not take them into her possession. Her excuse for not doing so was the warning of the doctor as to the infectious nature of his disease and the danger of contracting it, but this can not be substituted for actual or constructive delivery, as above defined and illustrated, for, repeating what is said in the *Milholland* case, "the requirement of actual delivery is the only substantial protection, and the court should not weaken it by permitting the substitution of convenient and easily proven devices." Only explicit and convincing evidence of every element with respect to gifts *inter vivos* or *causa mortis* can support such donations. A constructive as well as an actual delivery much be such as to completely divest the donor of his property and to completely invest the donee with it.

The allegations of the bill being insufficient to support the contention that the property in question passed by gift, there yet remains for consideration the alleged trust feature of this case. The question presented is whether an actual or constructive delivery as above defined and illustrated is necessary in the creation of a trust of property to be held by one for the benefit of another, arising out of a parol declaration of the donor to that effect.

If there is a declaration by the owner of the property to the effect that he holds the property in trust for another, this court has said, in *Milholland v. Whalen*, 89 Md. 212, 43 A. 43, the second case, that a valid trust of personal property may be created by a parol declaration that the declarant holds the property as trustee for another, and such trust may be enforced and a party may constitute himself as trustee, in which event, from the very nature of the transaction, there cannot be deliv-

ery to the trustee because he already holds it. *Baltimore Retort Co. v. Mali,* 65 Md. 93, 3 A. 286. But no such situation here exists. There is no allegation in the bill that a trust was considered or created with the declarant as trustee, and no such situation can be assumed or inferred from the facts alleged. We feel that every prerequisite and reason assigned in the above cases in order to hold gifts of either class valid applies with like effect where property is given to one for the use of another.

It has long been held that a gift which is not good and valid at law cannot be made good in equity, that is, equity will not supply a lacking requisite to a valid gift at law. This would certainly apply where delivery, the first essential of the gift, is wanting. This principle is stated in the case of *Snowden v. Reid,* 67 Md. 130, 134, 8 A. 661, 663, 10 A. 175, where it is said "that where a gift is imperfect by reason of some act or circumstance which the law requires as necessary to pass the title, it cannot be made good in equity. *Baltimore Retort Co. v. Mali,* 65 Md. 93, 3 A. 286."

In the *Snowden* case, it was stated, in a supplemental opinion by Judge Miller, concurred in by Judge Alvey: "Where the subject of gifts is considered, if such delivery is wanting, the gift is invalid both in law and in equity."

Thus it would seem that equity, in its recognition of trusts and in the enforcement of them, requires the same formalities in passing of the subject matter of the gift as is required at law. The question is directly decided in *Estate of Smith,* 144 Pa. 428, 22 A. 916, and in *Wadd v. Hazleton,* 137 N. Y. 215, 33 N. E. 143. See also *Pennington v. Gittings,* 2 G. & J. 208, 209, and annotations.

It seems that upon reasoning, and because of the care to be exercised in upholding gifts of any kind, courts of equity would be no less studious than courts of law in the observation of formalities and prerequisites that prevent fraud and deceit in connection with the transfer of property.

The same actual or constructive delivery, as above defined, that is necessary to sustain a gift *causa mortis* or

*inter vivos* is required in the creation of a trust in a third party for the benefit of another. The allegations in the bill do not support any one of these three methods for the transfer of property by gift.

The order of the chancellor in overruling the demurrer must be reversed and the bill dismissed.

> *Order reversed and bill dismissed, with costs to the appellants.*