518 A.2d 1087

**Ida HAMILTON**

v.

**Donald M. CAPLAN, Personal Representative of the Estate of Joseph C. Gilbert, et al.**

**No. 378, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 7, 1987.

Edgar B. May (Mark J. Diskin on the brief), Washington, D.C., for appellant.

Steven R. Buckner of Bethesda, for appellee, Donald M. Caplan.

Bruce Marcus of Beltsville, for appellee, Bebe Gilbert.

Submitted to MOYLAN, ALPERT and POLLITT, JJ.

ALPERT, Judge.

This case involves a dispute between appellant, Ida Hamilton (sister of the late Joseph C. Gilbert), Donald Caplan (personal representative of the Estate of Joseph C. Gilbert), and Bebe Gilbert (surviving spouse of the late Mr. Gilbert) over the ownership of three promissory notes and the interest accrued thereon.

Joseph C. Gilbert died in the summer of 1983. Three demand notes were found in his office after his death. Two notes were made by the Palm Management Corporation. These notes were made on November 27, 1981, in the amount of $196,083.57, and on December 1, 1981, in the amount of $54,173.06. Each bore an interest rate at the prime rate charged by Morgan Guaranty Bank. The third note was made by Dominique Restaurant in the amount of $100,000.00 dated August 13, 1982. This later note bore an interest rate at 1% over the prime rate charged by Security National Bank. All three notes were made payable to Ida Hamilton. All interest on the notes was paid to Joseph Gilbert, who deposited it in a checking or savings account that he held jointly with Ida Hamilton.

Joseph C. Gilbert was an accountant. His accounting firm prepared tax returns, maintained books and records for various persons and businesses, prepared documents such as promissory notes, gave investment advice, and invested funds for others. Gilbert handled the affairs of several clients, among whom was his sister, Ida Hamilton. The evidence is uncontradicted that Gilbert prepared his sister's tax returns, maintained her financial records, paid some bills out of their joint account, and wrote and held for safekeeping his sister's last will and testament.

After Joseph Gilbert's death, Ida Hamilton sought a declaratory judgment that the notes and accumulated interest were her property and that the money that she had

deposited in a joint account with Joseph Gilbert for investment purposes be repaid to her. As support for her assertion that the notes and bank account belonged to her, Ida Hamilton presented evidence that the decedent had (1) placed the notes in her name, (2) deposited the interest in their joint account,[1] (3) spoken of the notes' existence as an investment made on her behalf,[2] and (4) otherwise demonstrated an intent that the notes were made for her.

In a separate suit, the estate of Joseph C. Gilbert contested Mrs. Hamilton's claim, alleging that since the notes were found in Joseph C. Gilbert's office there had been no "delivery" and hence no "gift" of the notes. The estate interpreted the existence of the joint account between the decedent and appellant Hamilton as purely for the convenience of the decedent. The estate further asserted that Joseph Gilbert provided the entire funding for the notes, such that the estate sought to recover not only the notes and interest paid thereon but also the balance of the joint accounts.

In yet a third suit, Bebe Gilbert, the surviving spouse of the decedent, also contested Hamilton's position. The widow alleged in that suit that the money loaned in return for the notes came solely from a joint account between herself and her husband. She further alleged that since one-half of all the money in the marital account belonged to her, she was *at least* entitled to half of the money represented by the notes and half the interest accrued thereon. She asserted, however, that she was properly entitled to the *entirety* of the notes and interest because her husband had an oral

---

**1.** Ida held the checkbook for the joint account at her home. The statements were mailed to her. She claimed the interest on the account as her income, and the account was held in her social security number. °

**2.** Ida was not allowed to testify regarding the conversation her brother had had with her as her lips were sealed by the Dead Man's Statute, see discussion of issue 4 *infra,* but a neighbor who overheard the conversation reiterated what the decedent had said to his sister.

agreement with her that any investment made from their joint account would be shared equally between the spouses.

The three cases were consolidated for trial. At trial, a special verdict was requested and the jury found as follows:

i. That Joseph C. Gilbert during his lifetime did not make a gift of the promissory notes to Ida Hamilton.

ii. That there was an oral agreement between Bebe Gilbert and the late Joseph C. Gilbert that any "investment" made by Joseph C. Gilbert from funds from a joint account in the names of Joseph C. Gilbert and Bebe Gilbert would be shared equally between them.

iii. That the joint bank accounts between Ida Hamilton and Joseph C. Gilbert were jointly owned by them with rights of survivorship.

iv. That Ida Hamilton gave Joseph C. Gilbert $16,-870.00 to invest on her behalf.

Based on these jury determinations, the court entered a declaratory judgment as follows:

i. That Bebe Gilbert and Donald Caplan, personal representative of the estate of Joseph Gilbert, each own a one-half interest in the notes and accrued interest thereon.

ii. That Ida Hamilton was the sole owner, by survivorship, of any funds remaining in the joint accounts in the names of Ida Hamilton and Joseph C. Gilbert.

iii. That Section 8–103, Estates and Trusts, Annotated Code of Maryland, barred Ida Hamilton from recovering investment funds for failure to file a claim within the six month period prescribed by the foregoing statute.

Appellant, Ida Hamilton, appeals from the lower court's determination with respect to judgments i and iii above and raises the following questions:

1. Where the undisputed evidence disclosed that decedent was an accountant who prepared appellant's tax returns; paid her bills when she was away or disabled; maintained at his office all of appellant's financial documents, Last Will and Testament and records, did the

Court err in refusing to instruct the jury that although to perfect a gift there must be "delivery," that delivery may be "constructive" such that it is not always necessary that a donor physically deliver the gift into the possession of a donee?

2. Did the Court err in refusing to instruct the jury that there may be an *inter vivos* gift of a remainder interest, such that a donor may retain the benefits of an item of gift for life, but irrevocably give the remainder to his donee upon death?

3. Did the Court err in failing to rule as a matter of law that an irrevocable gift of the notes was made to the appellant since appellant was the sole named payee, and only she or a party authorized by her could cash the interest checks, extend or negotiate the notes, or demand payment, and hence from the time the notes were made all of the rights and entitlement in the notes irrevocably vested in her? Neither Joseph C. Gilbert while he lived nor his estate could lawfully collect the notes once they were put into appellant's name or substitute another payee for appellant.

4. Did the Court err in failing to permit appellant's testimony concerning what decedent told her about the notes and their arrangement concerning certain money appellant invested with decedent on the basis that the "Dead Man Rule" barred such testimony, where every party and witness other than appellant gave testimony about what the decedent had said to them or said to others?

5. Where both parties to a joint checking account were authorized without consent or restriction of the other party to withdraw funds or issue checks, can one party to the account claim an ownership interest in a gift purchased by the other party for his sister with funds from the account, where it is proven each party contributed equally to the account?

6. Where appellant gave money to her brother Joseph C. Gilbert to invest for her, does such money become a

part of Joseph C. Gilbert's estate upon his death, such that appellant is required to make claim under Section 8-103, Estates and Trusts, Annotated Code of Maryland?

## I. *Constructive Delivery*

Appellant asserts that the trial court erred in refusing to instruct the jury on the issue of constructive delivery of the notes. We agree. Although trial courts are not required to present instructions to the jury in support of the unfounded theories of litigants, it is error to refuse a requested instruction where sufficient evidence was presented to generate a jury issue. *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258 (1974); *Schaefer v. Publix Parking Systems,* 226 Md. 150, 152-53, 172 A.2d 508 (1961).

The burden of establishing all the elements of a gift is cast upon the donee. *Dorsey v. Dorsey,* 302 Md. 312, 318, 487 A.2d 1181 (1985). The standard of proof is clear and convincing evidence. *Id.* at 318, 487 A.2d 1181, citing *Pomerantz v. Pomerantz,* 179 Md. 436, 440, 19 A.2d 713 (1941). In the case *sub judice,* appellant presented sufficient evidence to generate a question of fact as to whether the notes were delivered to her from the decedent. We explain.

"The validity of the alleged gifts depends upon the legal sufficiency of the deliveries." *Schenker v. Moodhe,* 175 Md. 193, 196, 200 A. 727 (1938). Delivery may be actual or constructive, but in either case must place the gifted property beyond the dominion and control of the donor and within the dominion and control of the donee. *Id.* at 196-97, 200 A. 727. The Court of Appeals explained:

> To be valid, a constructive delivery must not only be accompanied by words sufficient to show a donative intent, but must be of such a character as to completely divest the donor of dominion and control over the donation and to place it "wholly under the donee's power."

*Id.* at 197, 200 A. 727 (citations omitted).

The cases in which constructive delivery has been found involved circumstances where the donor thought he had

done all he could do to relinquish dominion and control over the donated item. *Malloy v. Smith*, 265 Md. 460, 466, 290 A.2d 486 (1972). The concept of constructive delivery evolved from the gift of items too difficult to deliver physically, such that the only practicable way to deliver the item was symbolically. *See In re Brown's Estate*, 343 Pa. 230, 22 A.2d 821, 825 (1941). In *Brooks v. Mitchell*, 163 Md. 1, 11–12, 161 A. 261 (1932), Judge Offutt explained:

> To be valid, a constructive delivery must not only be accompanied by words sufficient to show a donative intent, but must be of such a character as to completely divest the donor of dominion and control over the donation and to place it "wholly under the donee's power" (*Pomeroy, Eq. Jur.*, sec. 1149), as where the donor gave to the donee a sealed package informing him that it contained bank books, money (*Turner v. Estabrook*, 129 Mass. 425); an insurance policy (*First Nat. Bank v. Thomas*, 151 Md. 250, 134 A. 210); the key to a trunk (*Jones v. Selby*, Prec. Ch. 289, *Coleman v. Parker*, 114 Mass. 30; *Cooper v. Burr*, 45 Barb. (N.Y.) 9); the key to a safe deposit box accompanied by an order for its delivery (*Phipard v. Phipard*, 55 Hun. 433, 8 N.Y.S. 728; *Thomas' Admr. v. Lewis*, 89 Va. 1, 15 S.E. 389); the key to a cupboard (*Goulding v. Horbury*, 85 Me. 227, 27 A. 127); a trunk, box, or other receptacle containing a savings bank deposit passbook. *Vandermark v. Vandermark*, 55 How.Prac. (N.Y.) 409; *Turner v. Estabrook*, *supra*. Other cases illustrating the application of the rule may be found collected in the notes to *Pomeroy, Eq. Jur.*, sec. 1149, 18 *L.R.A.* 170; 40 A.L.R. 1255. The rule as thus stated is subject to this qualification, that, while the delivery may be constructive, "it must be as nearly perfect and complete as the nature of the property and the attendant circumstances and conditions will permit" (28 C.J. 692), and many of the cases in which the courts have held a constructive delivery insufficient turn upon that qualification.

*See also Schenker v. Moodhe,* 175 Md. 193, 197–98, 200 A. 727 (1938).

This concept of constructive delivery was later expanded in *Miller v. Hospelhorn,* 176 Md. 356, 4 A.2d 728 (1939), to include situations in which delivery of title was disputed. The *Miller* court stated:

> *What constitutes delivery depends largely on the intent of the parties. A constructive delivery is sufficient if made with the intention of transferring the title.* It is not necessary that delivery should be by manual transfer; and this rule is recognized by the definition of delivery in the negotiable instruments law as the transfer of possession, "actual or constructive." *Each case, when it turns on the facts, must stand on its own facts.* 7 Am.Jur. page 809. The final test is, did the indorser of the notes *do such acts in reference to them as evidenced an unmistakable intention to pass title to them and thereby relinquish all power and control over them.*

*Id.* at 367, 4 A.2d 728 (emphasis added).

### Delivery to an Agent

■ In this case, the decedent purchased the notes with his money and put them in his sister's name. Thereafter, he held the notes in his office. Clearly, there was no actual delivery of the notes to Ida. A constructive delivery may have been accomplished, however, if the decedent intended to transfer an interest in the notes to her and held them as her agent.

The existence of an agency relationship is a question of fact which must be submitted to the factfinder if any evidence tending to prove the agency is offered. *Flanigan & Sons, Inc. v. Childs,* 251 Md. 646, 652, 248 A.2d 473 (1968). The burden of proving the agency is on the party alleging its existence, who must show the nature and extent of the agency as well as its existence. *Purnell v. Union Trust Co.,* 167 Md. 85, 99, 173 A. 1 (1934); *Schear v. Motel Management Corp. of America,* 61 Md.App. 670, 487 A.2d 1240 (1985). In the case *sub judice,* appellant presented

sufficient evidence to generate a question of fact as to whether the decedent constructively delivered the notes to her by putting them in her name and holding them as her agent. *See, e.g., Bryan v. Bartlett,* 435 F.2d 28 (8th Cir.1970) (delivery of note to payee's agent is equivalent of delivery to payee); *Eklund v. Eklund,* 76 Cal.App.2d 389, 173 P.2d 50 (1946) (where donor retains custody and control over insurance policy as the agent of the donee and donor does not vest in himself any interest or title to the insurance policy, gift is valid); *Giles v. Giles,* 94 S.W.2d 208 (Tex.1936) (where grantee signed and delivered note payable to grantor's brother, grantor had no authority to cancel or release such debt to brother without brother's consent, notwithstanding that the grantor's death antedated the due date on the note); *Hunt v. Holmes,* 64 N.D. 389, 252 N.W. 376 (1934) (where father bought realty intending it to be a gift for his daughter, delivery of vendor's deed to father, naming daughter as grantee, was sufficient to pass title to daughter); *Pederson v. Jordan,* 177 Wash. 379, 32 P.2d 114 (1934) (where, unbeknownst to principal, agent lent principal's funds to himself and his wife and executed a note in favor of the principal which was kept by agent, there was constructive delivery of the note to the principal); *Lynch v. Lynch,* 124 Cal.App. 454, 12 P.2d 741 (1932) (gift is valid where donor exercises custody and control over the gift of corporate stock as the donee's agent); *Pohl v. Fulton,* 86 Kan. 14, 119 P. 716 (1911) (requirement of delivery is satisfied where donor retains possession of gift as trustee). *See generally* 6 J. Reitman, H. Weisblatt, W. Schlichting, T. Rice and J. Cooper, *Banking Law* § 113.03 (1986) (delivery to payee's authorized agent is equivalent to delivery to the payee).

Appellant stated that the decedent prepared her taxes, held her last will and testament, generally managed her financial affairs, and occasionally made investments on her behalf. These facts may support the conclusion that the decedent acted as his sister's agent with respect to the purchase and delivery of the notes in question. Appellant

testified that although she did not know the location of the notes, or even their amount, until after the decedent's death, she was aware that her brother had made investments for her to protect her if anything should happen to him. To wit, her brother told her that there were some notes made for her.[3]

We note that conflicting evidence was presented on the issue of the decedent's agency. The notes in controversy were not found among the files the decedent kept for the appellant.[4] Nor did the decedent list the notes among appellant's assets in the accounting he did for her. Rather, the decedent listed the notes among his own assets. In addition, the decedent's wife and the decedent's estate presented evidence that the notes were made in Ida Hamilton's name merely to prevent Mr. Gilbert's employees from knowing the true nature of the decedent's investments and were never delivered to her because Mr. Gilbert never intended a gift to be made of them.

The fact that the notes were placed in Ida's name is some indicia of the fact that the decedent may have intended to make a gift. The decedent unquestionably acted as the appellant's agent in handling her financial affairs, and there is sufficient evidence to believe that he may have held the notes for her as her agent. Accordingly, we hold that the judge improperly instructed the jury when he refused appellant's request that the jury be instructed on the law of constructive delivery. Enough evidence was presented that the jury should have been asked to consider whether a constructive delivery [5] was made to Ida by her brother in

---

**3.** This testimony was admitted via a neighbor who had overheard the conversation.

**4.** The notes were found in the right-hand top drawer of the decedent's desk. They were found by his secretary after his death.

**5.** *See Miller v. Hospelhorn,* 176 Md. 356, 367–68, 4 A.2d 728 (1939). *Accord Billingsley v. Kelly,* 261 Md. 116, 125–26, 274 A.2d 113 (1971). *See also Malloy v. Smith,* 265 Md. 460, 463–466, 290 A.2d 486 (1972). *See generally Boethe v. Dennie,* 324 A.2d 784, 787–88 (Del.Sup., 1974).

his capacity as his sister's agent. *See Flanigan,* 251 Md. at 652, 248 A.2d 473.

## II. *Inter Vivos Gift of Remainder Interest*

■ Appellant next contends that the trial court erred in refusing to instruct the jury that the decedent may have made an *inter vivos* gift of a remainder interest at death, such that the decedent retained the benefits of the note during his life, but irrevocably gave the remainder to the appellant upon his death. We agree.

Appellant has presented sufficient evidence to generate a jury issue as to whether the decedent made an *inter vivos* gift of a remainder interest in the notes. The law in Maryland is clear, *"if there is a proper delivery,* the donor of a gift can relinquish title to a vested remainder and at the same time retain a present interest in the property.... " *Register of Wills v. Sterling,* 264 Md. 638, 640–41, 287 A.2d 771 (1971) (emphasis added). In this case, conflicting evidence was presented on the issue of whether the notes were ever delivered to the appellant [6] and the issue of constructive delivery was never put to the jury. Accordingly, on remand, we direct the trial judge to instruct the jury to consider, first, whether a gift was delivered and, second, the character of that gift. The evidence before the court could support a finding that a gift was made of the notes or that a gift *inter vivos* of a remainder interest was made. *See Baltimore Retort and Fire Brick Co. of Baltimore City v. Mali,* 65 Md. 93, 98–99, 3 A. 286 (1886), wherein it was said:

If the father had declared that he held or would thenceforth hold the shares of stock in trust for his daughter, then, perhaps, equity would seize upon and enforce such trust for the benefit of the donee, although voluntarily created. But here there is no such declaration of trust attempted to be established, and the assignment produced and relied on is altogether inconsistent with any

---

**6.** See discussion of issue I, *supra.*

idea of a trust in favor of the daughter. The assignment professes to convey the stock to the daughter absolutely, but the gift was left imperfect for the want of an actual transfer of the stock on the books of the corporation; and equity, as we have seen, will not lend its aid to consummate the gift, by directing the transfer to be made.

(citations omitted) (emphasis added). *Compare Boethe v. Dennie,* 324 A.2d 784, 788 (Del.Super., 1974):

*It is true that a donor can during his lifetime create an inter vivos trust under which he can retain certain rights, such as income rights, during his lifetime. Bodley v. Jones,* Del.Supr., 27 Del. Ch. 273, 32 A.2d 436 (1943); *Highfield v. Equitable Trust Co.,* [Del.Supr., 4 W.W.Harr. 500, 155 A. 724 (1931)], supra; *Robson v. Robson's Adm.,* Del.Ch., 3 Del.Ch. 51, 62 (1866). *However, in order to create such a trust, where the creation of the trust is without legal consideration, the formal requirements for a valid gift must be found. Robson v. Robson's Adm.,* supra. *The donor must have divested himself of some interest which he formerly had in the property, and the divestiture must have been absolute at the time of creation of the trust.* Ibid. Moreover, it must clearly appear that this result was intended by the donor. *Bodley v. Jones,* supra.

(Emphasis added). *See also Lynch v. Lynch,* 124 Cal.App. 454, 12 P.2d 741 (1932) (gift of corporate stock is not void because donor reserves a right to dividends declared during his lifetime). The determination of the extent of the gift, if at all, is a question of fact for the trier of fact. *Boethe,* 324 A.2d at 787. Considering the facts in the light most favorable to the plaintiff, enough evidence was presented to support a finding of a gift of the notes in toto or a gift *inter vivos* of a remainder interest on the notes (or no gift at all).

III. *The Commercial Code*

■ Appellant contends that the fact that the notes were in her name creates a presumption that a gift was intended

to be made to Ida Hamilton by the decedent, and that "the burden should have shifted to the appellees to counter this presumption." Appellant relies generally on article three of the Commercial Code to support her contention, but cites no specific authority for her supposition.

We find nothing in the commercial statute to support appellant's notion. To the contrary, a note (like a gift) must be delivered before it will become effective. 2 *Bender's UCC Service* Commercial Paper § 3.05 (1986); 6 J. Reitman, H. Weisblatt, W. Schlichting, T. Rice and J. Cooper, *Banking Law* § 113.02 (1986) (hereinafter "Banking Law"). The Commercial Law Article defines delivery as "the voluntary transfer of possession." Md.Comm.Law Code Ann. § 1-201(14) (1975 and 1986 Supp.). This transfer may be actual or constructive. *Billingsley v. Kelly*, 261 Md. 116, 112-27, 274 A.2d 113 (1970). *See also Banking Law* at § 113.03 wherein it was explained:

> In order to have a constructive delivery, there must be some act which is equivalent to an actual delivery, plus an intent to make the instrument an enforceable obligation. It is sometimes difficult to determine what acts constitute constructive delivery. Each case must be considered on its own facts.

It may be direct or accomplished through an agent. *Banking Law* at § 113.03.

In the case *sub judice*, conflicting evidence was presented as to whether the note was delivered to the payee, Ida Hamilton.[7] Therefore, we hold that the court did not err when it refused Mrs. Hamilton's instruction that a presumption of delivery arose in her favor (based on the commercial law) and that the appellee had the burden to rebut that presumption.[8] To the contrary, the burden of establishing

---

7. See discussion of constructive delivery under issue I.

8. See *Banking Law* § 113.04, wherein it was said:
   There is a presumption against delivery when an instrument is in the possession of the drawer or maker. The converse, however, is

delivery under commercial law is on the would-be holder, *see Billingsley v. Kelly*, 261 Md. 116, 123–27, 274 A.2d 113 (1971), just as the burden of establishing a gift is on the donee. *Dorsey*, 302 Md. at 318, 487 A.2d 1181.

## IV. *The Dead Man's Statute*

■ Appellant contends that the trial court erred in refusing to allow the appellant, Ida Hamilton, to testify as to what the decedent told her concerning the promissory notes. The trial court refused to allow the testimony on the grounds that it was barred by the "Dead Man's Statute." Md.Cts. & Jud.Proc.Code Ann. § 9–116 (1984). Appellant proffered the testimony she would have given had she been allowed to testify.[9] Appellant contends that the trial court's exclusion of her testimony was error because "[t]estimony crept in through the mouth of almost every witness concerning what the dead man said" and, therefore, her testimony is admissible under the exclusion to the dead man's rule. We disagree.

The "Dead Man's Statute" reads as follows:

A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, *unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same*

---

not true. There is no presumption of delivery if the instrument is in the possession of the payee, or his agent, since possession could have been obtained without an intent of the drawer or maker to make a delivery.

**9.** Ida Hamilton stated that Joseph Gilbert told her that the notes were put in her name to provide for her in the event of his death.

*transaction or statement.* (An.Code 1957, art. 35, § 3; 1973, 1st Sp.Sess., ch. 2, § 1; 1976, ch. 269.)

Md.Cts. & Jud.Proc.Code Ann. § 9–116 (1984) (emphasis added). Appellant relies on the later, italicized portion of the statute to support her assertions. We interpreted that portion of the Dead Man's Statute in *Reddy v. Mody,* 39 Md.App. 675, 388 A.2d 555, *cert. denied,* 283 Md. 736 (1978), wherein we said:

> It is true, . . ., that the courts construe the Dead Man's Statute in order to disclose as much evidence as possible. This does not mean, however, that the language or the purpose of the Statute can be ignored.
>
> The language of the Statute is explicit. The statutory exception is triggered by "testimony of the dead or incompetent person." Testimony is defined as "evidence given by a competent witness, under oath or affirmation, as distinguished from evidence derived from writings, and other sources." Black, Black's Law Dictionary 1646 (4th ed. 1968). By the terms of the Statute, the testimony must be that of the deceased or incompetent person. *The exception is not triggered by hearsay testimony of a third person. The mere fact that there has been testimony of what the dead person said, regardless of the source, is not enough.*
>
>    .     .     .     .     .
>
> The language of the Statute has been revised (*See* Revisor's Note § 9–116), but the meaning and purpose have remained the same.
>
> It was the purpose of the Statute in 1864, as it is today, to put the parties to a suit upon terms of substantial equality in regard to the opportunity to give testimony. *Riley v. Lukens Dredging and Contracting Corp.* [4 F.Supp. 144, (D.C.Md.1933)] *supra.* This goal of mutuality is achieved by allowing a party to testify about a transaction only where the *deceased* has previously [testified] about the transaction. *This equality between the parties would be destroyed if, as the appellees suggest, a*

*third party's testimony concerning the transaction would remove the disqualification of the party litigant.* *Id.* at 682–84, 388 A.2d 555 (emphasis added).

Applying the *Reddy* principle, we hold that the testimony of the other witnesses in this case did not render Ida Hamilton competent to testify about the transaction in question, even though these other witnesses quoted the conversation about which Ida Hamilton wished to testify. Accordingly, the trial court did not err in declining to admit the proffered testimony. The substance of the proffered statement went to the heart of the appellant's case and was the sort of testimony which the Dead Man's Statute was designed to prevent. *Reddy*, 39 Md.App. at 685, 388 A.2d 555. *See also Ortel v. Gettig*, 207 Md. 594, 599–606, 116 A.2d 145 (1955).

### V. *Constructive Trust*

██ Appellant asserts that:

If this court decides that the three promissory notes belong to Ida Hamilton, there is no basis in law for the determination that Bebe Gilbert should have one-half of such notes since she may have contributed funds to the joint bank account from which the money was loaned which gave rise to the promissory notes, or because she had an oral agreement with the decedent that one-half of any investments that the decedent made with funds from the joint account should belong to Bebe Gilbert.

We agree.

Appellee Bebe Gilbert contends that the equal investment partnership of herself and her husband, the decedent, survived the withdrawal of funds from their joint account and entitles Bebe to one-half the interest on the promissory notes. This contention is tantamount to a request that the court impose a constructive trust on her behalf in the notes. A constructive trust is a remedy employed by the courts to convert the holder of legal title to property into a trustee "for one who in good conscience should reap the benefits of

the possession of said property." *Wimmer v. Wimmer*, 287 Md. 663, 414 A.2d 1254 (1980). The remedy is applied where property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the title holder to retain the property. *Id.; Bowie v. Ford*, 269 Md. 111, 118–19, 304 A.2d 803 (1973); *O'Conner v. Estevez*, 182 Md. 541, 35 A.2d 148 (1943); *Springer v. Springer*, 144 Md. 465, 125 A. 162 (1924). The purpose of imposing a constructive trust is to prevent the unjust enrichment of the title holder. *Wimmer*, 287 at 668, 414 A.2d 1254. The Court of Appeals explained in *Bowie v. Ford*, 269 Md. 111, 118–19, 304 A.2d 803 (1973):

> Constructive trusts ... are raised by equity in respect of property which has been acquired by fraud.... They arise purely by construction of equity, independently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustees for the purpose of working out the remedy. The trusts are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud and not trust. Equity declares the trust in order that it may lay its hand on the thing and wrest it from the possession of the wrongdoer.

*Eisinger Mill Etc. Co. v. Dillon*, 159 Md. 185, 191, 150 A. 267 (1930).

In *Kornmann v. Safe Deposit & Trust Co.*, 180 Md. 270, 23 A.2d 692 (1941), the Court of Appeals addressed the application of a constructive trust to funds which were alleged to have been fraudulently withdrawn from a couple's joint bank account. The funds deposited into the account were the result of the joint efforts of both spouses and had been deposited to the credit of "C. Edward Snyder, in trust, until withdrawal thereof, for himself and Carrie H. Snyder, joint owners, subject to withdrawal by either, the balance at death of either to belong to the survivor." While Mrs. Snyder was in a nursing home due to a serious illness, Mr. Snyder withdrew all the joint funds and deposited them

into an account in his sole name. He then disposed of some funds, willed others away and created a trust for Mrs. Snyder for her life with the remainder to his close relatives. After his death, Mrs. Snyder sued, claiming that Mr. Snyder fraudulently deprived her of the use of the funds and cut off her right of survivorship in the same. The court rejected Mrs. Snyder's argument and held that:

The form of this deposit, by which either may withdraw any or all of it during their joint lives, and the survivor takes all that is left on the death of the other, has been approved in all the decisions of this court from *Milholland v. Whalen*, 89 Md. 212, 43 A. 43, 44 L.R.A. 205, to this day, and to say now that C. Edward Snyder did not have the right to do what the appellant here complains of would be to overrule all of them. Mrs. Snyder could have done the same thing. *The charge of appellant is that because he did it, it was fraudulent. That is a conclusion at variance with all the decisions of this court respecting such deposits. The charge of fraud is merely a belief or conclusion, without a statement of the facts upon which such belief or conclusion is founded. Homer v. Crown Cork & Seal Co.*, 155 Md. 66, 74, 83, 141 A. 425 [1928]; *Miller's Eq. Proc.* 118.

*It makes no difference, in the absence of fraud, whose money it was when deposited, or how much either contributed to the trust or deposit. Once deposited in such an account, it is subject to the order of either.* As said in *Fairfax v. Savings Bank of Baltimore*, 175 Md. 136, 144, 199 A. 872, 876, [1938] 116 A.L.R. 1334; "The power of withdrawal is not joint, as is established by the words of the account, 'subject to the order of either.' It exists completely in each beneficiary, with the power of separate and independent exercise. It is, moreover, a reserved personal right of each and beyond the control of the other, and, therefore, whether it shall be exercised depends wholly upon the individual will of each severally motivated." Or as we said in *Wetzel v. Collin*, 170 Md. 383, 387, 185 A. 117, 118, [1936] *"there can be no doubt*

*of the right of either trustee or cestui que trust to so change the account as to appropriate to her own use all the money on deposit in this account, or to transfer it from the names of both into her own name, regardless of whose money it was."*

*Id.* at 273–84, 230 A.2d 692 (emphasis added).

We see no difference between Kornmann and the case *sub judice.* Maryland has repeatedly recognized that the right to withdraw funds from a joint bank account is a personal right enjoyed separately by each tenant, subject only to the prior exercise of the co-tenant. *Scott v. Bowman,* 253 Md. 55, 59, 251 A.2d 598 (1969); *Fairfax v. Savings Bank of Baltimore,* 175 Md. 136, 144–45, 199 A. 872 (1938); *McHugh & Assoc. v. Comm. & Farm. Bk.,* 59 Md.App. 519, 523, 476 A.2d 736 (1984); *Andree v. Equitable Trust Co.,* 46 Md.App. 688, 689, 420 A.2d 1263 (1980); *Haneke v. United States,* 404 F.Supp. 98, 198 (1975). Bebe Gilbert never alleged fraud on the part of her husband. Thus, the imposition of a constructive trust on the notes which were purchased from the funds from her joint account with the decedent would be improper, notwithstanding Bebe's agreement with her husband that all investments be made jointly. *See Kornmann,* 180 Md. at 179–80, 23 A.2d 692. *See also Bowie,* 260 Md. at 110–11, 304 A.2d 803. *Cf. Wimmer,* 287 Md. at 674, 414 A.2d 1254 (court of equity will not deprive one person of property titled in his name and give it to another merely because the latter believes herself to be deserving of it). The decedent had an absolute right to remove funds from the couple's joint account and use those funds to make a gift to his sister. *Kornmann,* 180 Md. at 272–74, 23 A.2d 692. Accordingly, if the jury finds that a gift has been made to Ida of the notes, Bebe has no interest in the notes. The facts necessary to impose a constructive trust simply have not been presented in this case.[10]

---

**10.** Of course, if the jury finds that no gift was made of the notes, and the notes were made by the decedent for investment purposes, then

## VI.  *Statute of Limitations*

Appellant contends that the trial court erred in barring her $16,870 claim under section 8–103 of the Estates and Trusts Article.  She asserted that the money she gave to her brother for investment purposes belonged to her and was never part of the decedent's estate.  The trial judge disagreed:

> The jury found that Ida Hamilton gave Joseph Gilbert the sum of $16,870.00 for investment on her behalf. Based upon this finding Ida Hamilton had a claim against the Estate of Joseph C. Gilbert for an accounting with respect to such investment funds.
>
> Section 8–103, Estates and Trusts, Annotated Code of Maryland, provides that all claims against an estate of a decedent, existing at the time of his death, must be presented to the personal representative within 6 months following publication of notice to creditors, or be forever barred.  The time for filing such claims against the Estate of Joseph C. Gilbert expired on May 16, 1984.  Ida Hamilton failed to file her claim for return of the investment funds during the specified time for filing such claims, and her attempt to recover the same thereafter must fail.

The pertinent statute reads as follows:

> Except as otherwise expressly provided by statute with respect to claims of the United States and the state, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within six months after the first appointment of a personal representative.

---

Bebe would be entitled to a one-half interest in the notes by virtue of her agreement with the decedent in addition to any interest recovered through the estate.

Md.Est. & Trusts Code Ann. § 8–103 (1974). We note that, in analyzing the applicability of this statute, we must examine the claim to determine whether it is in fact a claim against an estate of a decedent, for only such claims are barred if not presented within six months. Md. Est. & Trusts Code Ann. § 8–103 (1974). *See also Campbell v. Welsh,* 54 Md.App. 614, 628, 460 A.2d 76 *cert. denied,* 297 Md. 108 (1983).

In the case sub judice, the appellant claimed that the money given to the decedent by the appellant for investment belonged to her and was never a part of the decedent's estate. Accordingly, the appellant asserts that the claim could not be barred by the Estates and Trusts Article since no claim was ever made against the estate. In order to evaluate the appellant's theory, it is necessary to first define what is meant by a "claim against an estate of a decedent."

■ Although Maryland has never specifically construed the term "claim" within the meaning of the statute *sub judice,* it has been defined generally in other jurisdictions having statutes similar to Maryland. For example:

> The word "claims," as used in non-claim statutes, has been construed to mean debts or demands of a pecuniary nature that could have been enforced against the deceased in his lifetime and could have been reduced to a simple money judgment. The phrase "debts or demands" has also been construed to include claims of creditors that could be enforced in equity.

31 Am.Jur.2d *Executors and Administrators* § 276 (1967), cited with approval in *Superior Electric Co. v. Burski,* 24 Conn.Sup. 446, 193 A.2d 898, 899 (1963). *Accord Breen v. Phelps,* 186 Conn. 86, 439 A.2d 1066, 1076 (1982). We find this definition persuasive and in accord with cases in which the Maryland statute has been applied. *See, e.g., Burket v. Aldridge,* 241 Md. 423, 216 A.2d 910 (1965) (tort claim); *Campbell v. Welsh,* 54 Md.App. 614, 460 A.2d 76, *cert.*

*denied,* 297 Md. 108 (1983) (contract claim for title to real property).

Appellant's claim for the return of the money she gave her brother to invest is barred by the nonclaim statute. With this claim, appellant stands in the shoes of a creditor. The claim is a demand of a pecuniary nature which could have been enforced against the decedent in his lifetime. Accordingly, we hold that this later claim was a claim against the estate which must have been brought within six months. Because the claim was not brought within the statutory period, it was barred.

JUDGMENT REVERSED; CASE REMANDED FOR A NEW TRIAL; COSTS TO BE PAID BY APPELLEES.